**CONAGRA, INC., a corporation, Plaintiff-Appellant,**

v.

**Robert C. SINGLETON, an individual, d/b/a SINGLETON SHRIMP BOATS, Singleton Shrimp Boats, Inc., a corporation, Defendants-Appellees.**

No. 83–3037.

United States Court of Appeals, Eleventh Circuit.

Oct. 11, 1984.

Thomas T. Steele, Tampa, Fla., for plaintiff-appellant.

Jeffrey L. Myers, Largo, Fla., for defendants-appellees.

Before HILL and ANDERSON, Circuit Judges, and TUTTLE, Senior Circuit Judge.

R. LANIER ANDERSON, III, Circuit Judge:

This case presents a somewhat unique issue regarding a son's right to use a family name in a business that is unrelated, but similar to the business his father had established. Conagra, Inc. appeals from the district court's ruling on its claim to enjoin the defendants, Singleton Shrimp Boats, Inc. and Robert C. Singleton,[1] from using the Singleton name in the shrimp trade. Conagra, as a successor in interest to the trademark rights of Singleton Packing Corporation, brought the instant action under § 43(a) of the Lanham Act (15 U.S.C. § 1125), Florida's common law of unfair competition, and Fla.Stat. § 495.151, which prohibits unfair competition and dilution of an established trade name. The district court granted Conagra partial relief and fashioned an injunction prohibiting the defendants from using labels that were copied from the product labels belonging to Singleton Packing. On this appeal, we consider whether the court's remedy was adequate protection for Conagra's trademark rights in light of the evidence adduced at trial.

## I. FACTS

Henry C. Singleton, Sr. began selling shrimp over 25 years ago in Tampa, Florida. The business was incorporated as Singleton Packing Corp., which through the years has engaged in procuring, packing, and processing shrimp. Although Singleton Packing sells some unprocessed and unlabeled products to a variety of customers, its primary product line consists of processed seafood products, which it markets either directly to large food service customers or through independent food brokers around the world. In the years preceding this litigation, Singleton Packing achieved annual sales of over $100,000,000 and was spending $400,000 a year on advertising and promotion. It ranks as the largest packer-processor of shrimp in the

---

**1.** We will hereinafter primarily refer to the individual defendant, Robert C. Singleton, in discussing the actions of or positions asserted collectively by both defendants.

United States. With the exception of its sales of fresh or unprocessed shrimp, all of Singleton Packing's products are distributed with labels prominently displaying the Singleton name.

Conagra, through a subsidiary corporation, acquired the operating assets and business of Singleton Packing from Henry C. Singleton on January 9, 1981. Under the purchase contract, Singleton transferred to Conagra all rights, title, and interest in and to any trademarks, trade names, and good will associated with Singleton Packing.

Singleton Shrimp Boats is a Florida corporation, organized in 1978 with its principal place of business in Pinellas County, Florida, across the Bay from Singleton Packing's headquarters in Tampa. Robert C. Singleton, the individual defendant, is a founder, chief executive, and principal owner of Singleton Shrimp Boats. Robert C. Singleton is also the son of Henry C. Singleton, the founder of Singleton Packing and Conagra's predecessor in interest in that corporation. Singleton Shrimp Boats is engaged in the wholesale and retail marketing of fresh and processed shrimp products in Florida. At the time this litigation began, Singleton Shrimp Boats had annual sales in the area of $2,000,000 a year.

Conagra filed the instant lawsuit in June of 1981, after it had failed to negotiate a settlement regarding the defendant's continued use of the Singleton name. Conagra claimed that the Singleton name, although not registered as a trademark, had acquired secondary meaning among consumers of seafood products, and thus was entitled to protection under the trademark laws. Because the defendants were subsequent users of the name, Conagra sought to prohibit the defendant's prominent display of the name in connection with Singleton Shrimp Boats' business.

Robert C. Singleton defended primarily on the grounds that Henry C. Singleton and Singleton Packing had acquiesced in his use of the Singleton name in connection with his business. He argued to the district court that he had been selling fresh shrimp and shrimp products since 1972, first from a retail outlet under the name Singleton Seafood Center, and later through the defendant corporation. As further proof of acquiescence, Robert C. Singleton argued that his father knew of his activities in the shrimp business and, rather than objecting to his use of the Singleton name, had encouraged the son's business by selling shrimp to Singleton Shrimp Boats under a steadily increasing line of credit.

The district court held that the defendant could continue to use the Singleton name in the shrimp trade. The court first found that the name had not acquired secondary meaning to consumers. Alternatively, it found that Singleton Packing Company had acquiesced in Robert C. Singleton's use of the name in the shrimp trade. Finally, with respect to the labels which Robert C. Singleton admitted copying from Singleton Packing, the district court found that the defendant's use of the copied labels created a likelihood of confusion, and the court enjoined the defendant from using those labels on the processed shrimp products of Singleton Shrimp Boats.

## II. INTRODUCTION

The defendant has not cross-appealed the district court's judgment enjoining use of the copied labels. Thus, we consider only Conagra's claim that the district court's refusal to enjoin the defendant's use of the Singleton name failed to adequately protect Conagra's right to exclusive use of that name in the shrimp trade. Conagra argues that the district court's findings—(1) that the Singleton name had not acquired secondary meaning, and (2) that Singleton Packing had acquiesced in the defendant's use of the name—were clearly erroneous.

We first evaluate the secondary meaning issue and determine that the district court's finding on this issue was contrary to the strong evidence in the record. We further conclude that Conagra established facts that entitled it to greater protection for its exclusive use of the Singleton name than was afforded by the district court's order.

We next consider the affirmative defense of acquiescence. Because the district court did not specify findings relating to either of the two doctrines argued by the defendant, abandonment or laches leading to equitable estoppel, we look at those doctrines. We conclude that the defendant presented insufficient evidence to carry the burden on the abandonment issue. We also conclude that the laches defense cannot support the defendant's continued use of the Singleton name in connection with the sale of processed shrimp. However, the defendant may have established a laches defense with regard to his use of the Singleton name in connection with the sales of fresh shrimp, and therefore we remand to the district court for further proceedings on this aspect of the laches defense. Accordingly, we leave it to the district court to fashion an appropriate remedy, consistent with its finding on the laches issue, and affording greater protection to Conagra's trademark rights in the Singleton name than was granted in the court's previous order.

## III. DISCUSSION

### A. *Conagra Has An Interest in the Singleton Name that Entitles it to Protection Under the Trademark Laws*

 Our cases have established two elements that Conagra had to prove to merit

injunctive relief under § 43(a) of the Lanham Act:[2] (1) that it has trademark rights in the mark or name at issue—*i.e.,* Singleton, *see, e.g., Citibank, N.A. v. Citibanc Group, Inc.,* 724 F.2d 1540, 1545 (11th Cir. 1984); and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiff's mark, such that there was a likelihood of confusion for consumers as to the proper origin of the goods created by the defendant's use of the Singleton name in his trade. *See, e.g., id.* at 1547; *Jellibeans, Inc. v. Georgia Skating Clubs, Inc.,* 716 F.2d at 839–46; *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 981 (11th Cir.1983).[3]

### 1. *Conagra's Right to the Singleton Name*

 With respect to the first element, Conagra's right to the exclusive use of the Singleton name in the shrimp trade, there is no dispute that Conagra purchased the full trademark rights to the name that belonged to Henry C. Singleton and Singleton Packing, whatever those rights might be. Although the Singleton name was not registered, the use of another's unregistered, *i.e.,* common law, trademark "can constitute a violation of [§ 43(a) ] where ... 'the alleged unregistered trademarks used by

**2.** Section 43(a) provides in pertinent part:

Any person who shall fix, apply, or annex, to any container or containers for goods, a false designation of origin, or any false description or representation, including words or other symbols intending to falsely describe or represent the same ... shall be liable to a civil action by any person doing business in the locality falsely indicated as that of origin ... or by any person who believes that he is or is likely to be damaged by the use of any such false description or representation.

15 U.S.C. § 1125(a). In essence, Conagra's claim in this litigation is that the defendant's use of the Singleton name in the shrimp business is a false designation of the origin of the defendant's goods because consumers would be led to believe either that the defendant's products were produced by Singleton Packing, or that Singleton Shrimp Boats and Singleton Packing were somehow affiliated. As such, Conagra states a claim similar to those previously recognized as falling within the scope of

§ 43(a). *See, e.g., Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d 833 (11th Cir. 1983); *cf. Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1163 (11th Cir.1982) (discussing standards for recovery under § 32(1)(a) of the Lanham Act, a provision closely analogous to § 43(a)). For purposes of this opinion, we draw no distinction between the cases relying upon § 43(a), which applies to unregistered but protectable marks, and § 32(a), which applies to registered marks. *See Jellibeans, Inc. v. Skating Clubs of Georgia, Inc.,* 716 F.2d at 839 n. 14.

**3.** Because of the similarity between Conagra's claim under the Lanham Act and its state common law and statutory claims, *see Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d 1160, 1167 (11th Cir.1982); *Amstar Corp. v. Domino's Pizza, Inc.,* 615 F.2d 252, 258 (5th Cir.), *cert. denied,* 449 U.S. 899, 101 S.Ct. 268, 66 L.Ed.2d 129 (1980), and because we find for Conagra on its Lanham Act claim, we do not address the state law claims separately.

the plaintiff are so associated with its goods that the use of the same or similar marks by another company constitutes a [false] representation that its goods came from the same source.' " *Boston Professional Hockey Ass'n v. Dallas Cap & Emblem Mfg., Inc.*, 510 F.2d 1004, 1010 (5th Cir.1975)[4] (quoting *Joshua Meier Co. v. Albany Novelty Mfg. Co.*, 236 F.2d 144, 147 (2d Cir.1956)), *cert. denied*, 423 U.S. 868, 96 S.Ct. 132, 46 L.Ed.2d 98 (1975). Because Singleton is a surname, the trademark laws protect Singleton Packing's (and thus Conagra's) right to exclusive use of the name only to the extent that the name has acquired "secondary meaning." *See Chevron Chemical Co. v. Voluntary Purchasing Groups*, 659 F.2d 695, 702 (5th Cir. 1981) (the trademark laws require proof of secondary meaning when the trademark is not sufficiently distinctive to identify the product as tied to a specific producer, as in the case of a family surname; in such cases the courts require a showing that the public identifies the name with the producer as the source of the product).[5] The district court's ruling, that the Singleton name had not acquired secondary meaning, is a finding of fact that we evaluate under the clearly erroneous standard. *See Brooks Shoe Mfg., Inc. v. Suave Shoe Corp.*, 716 F.2d 854, 860 (11th Cir.1983); Fed.R.Civ.P. 52.

The factors to consider in determining whether a name such as Singleton has acquired secondary meaning are: (1) the length and manner of its use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the plaintiff to promote a conscious connection in the public's mind between the name and the plaintiff's product or business; and (4) the extent to which the public actually identifies the name with the plaintiff's product or venture. *See Brooks Shoe Mfg., Inc. v. Suave Shoe Corp.*, 716 F.2d at 860; *Volkswagenwerk Aktiengesellschaft v. Rickard*, 492 F.2d 474, 477–78 (5th Cir.1974).

In the instant case, the secondary meaning of the Singleton name and its clear identification with Singleton Packing was hardly in dispute.[6] The first three factors supporting a finding of secondary meaning were clearly set forth in the record. Singleton Packing has prominently displayed the Singleton name on virtually all of its seafood products for over 25 years. It expended over $400,000 annually in worldwide markets in its promotion of the name. According to the current president of Singleton Packing, the promotional efforts were consciously directed at establishing the Singleton mark and its relationship to Singleton Packing's business. As an example, Conagra introduced a promotional film, which tied the Singleton name to the group of seafood products that Singleton Packing marketed. The film, which emphasized the extensive efforts at quality control developed by Singleton Packing, had been widely displayed to brokers and retailers in the seafood business for over three years preceding the instant litigation.

Finally, on the fourth and most telling factor, there was ample evidence that Singleton Packing had achieved the recognition for the Singleton name that it had sought. A representative of Conagra testi-

---

4. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), this court adopted as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981. *Id.* at 1209.

5. As noted in *Original Appalachian Art Works, Inc. v. Toy Loft, Inc.*, 684 F.2d 821, 831 n. 14 (11th Cir.1982), *Chevron Chemical* is not binding authority in this circuit because it was decided by a Unit A panel of the former Fifth Circuit after October 1, 1981. *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc); *Stein v. Reynolds Securities, Inc.*, 667 F.2d 33, 34 (11th Cir.1982). Nevertheless, *Chevron Chemical* is persuasive authority because it relies directly on former Fifth Circuit cases which are binding precedent on this court.

6. Indeed, in his opening remarks to the court below, counsel for the defendant stated that "the name Singleton did, in fact, obtain a secondary meaning." Trial Transcript at 21. We note this statement not as a binding concession by the defendants, *cf. Amstar Corp. v. Domino's Pizza, Inc.*, 615 F.2d 252, 263 n. 9 (5th Cir.1980), but rather to emphasize that defense counsel correctly perceived the strength of the plaintiff's proof on this issue.

fied that prior to the acquisition of Singleton Packing, market surveys revealed that the Singleton name was strongly identified with the products of Singleton Packing. An independent broker testified that he merely had to mention the Singleton name and customers knew that he was speaking of Singleton Packing. Henry C. Singleton testified that the Singleton name had achieved wide recognition in the industry by 1970. Even the individual defendant, Robert C. Singleton, referred to Singleton Packing as "Singleton" and testified that the name was recognized in the industry as referring to his father's company.

By this uncontradicted evidence at trial, it is clear that the Singleton name had acquired secondary meaning as the designation of the business of Singleton Packing. The district court was clearly erroneous in finding to the contrary. Thus, when Conagra acquired Singleton Packing, it acquired trademark rights in the Singleton name, which it could assert against allegedly infringing users.

### 2. Likelihood of Confusion

We now turn to a consideration of the defendant's use of the name to determine whether it caused a likelihood of confusion, such that Conagra was entitled to enjoin the defendant's continued use of the name in connection with the shrimp trade. The district court, because of its findings on the secondary meaning issue, did not have occasion to consider the likelihood of confusion question in the context of the defendant's general use of the name.[7] Because likelihood of confusion is a fact question, see Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d at 840 & n. 16, we ordinarily would remand for findings on this issue. In the instant case, however, the plaintiff's proof on this issue was so strong that any finding other than one of likely confusion would be clearly erroneous. Therefore, we decide the issue.

▮ Likelihood of confusion for purposes of § 43(a) of the Lanham Act is determined by analysis of a number of factors, including: (1) the strength of the plaintiff's mark; (2) the similarity between the plaintiff's mark and the allegedly infringing mark; (3) the similarity between the products and services offered by the plaintiff and defendant; (4) the similarity of the sales methods, i.e., retail outlets or customers; (5) the similarity of advertising methods; (6) the defendant's intent, e.g., does the defendant hope to gain competitive advantage by associating his product with the plaintiff's established mark; and (7) the most persuasive factor on likely confusion is proof of actual confusion. See, e.g., Jellibeans, Inc. v. Skating Clubs of Georgia, Inc., 716 F.2d at 739–46. We find that the similarity between the Singleton mark and the defendant's business name, Singleton Shrimp Boats, and, most persuasively, the proof that Conagra offered on actual confusion compelled a fact finding of likely confusion.[8]

#### a. Similarity of the Marks

▮ The distinctive aspect of the defendant's business name, Singleton Shrimp Boats, is the name Singleton, which of course is identical to the plaintiff's mark. See, e.g., Safeway Stores, Inc. v. Safeway Discount Drugs, Inc., 675 F.2d 1160, 1165–66 (11th Cir.1982) (the business name "Safeway Discount Center" or "Drugs" was found to infringe the trade name "Safeway;" the words "Discount Center" or "Discount Drugs" were found to be merely descriptive). The Singleton name is set out, apart from the words "Shrimp Boats," on all of the defendant's trucks, signs, media advertising, and business cards. We have no trouble concluding that the defendant has adopted a business name confusingly similar to the plaintiff's mark. Cf. Jellibeans, Inc. v. Skating Clubs of

---

7. The district court did find a likelihood of confusion in the limited area of the defendant's use of the copied labels.

8. The remaining factors, although not as overwhelmingly established in the record, do not undermine our conclusion that a finding of likely confusion was compelled, and we do not address these factors separately.

*Georgia, Inc.,* 716 F.2d at 841–42 (trade names "Jellibeans" and "Lollipops" were found to be confusingly similar); *John H. Harland Co. v. Clarke Checks, Inc.,* 711 F.2d 966, 975–76 (11th Cir.1983) (upholding lower court's finding that names "Memory Stub" and "Entry Stub" were found to be confusingly similar).[9]

### b. *Actual Confusion*

The most persuasive proof of likely confusion in the instant case was Conagra's proof of actual confusion. *See Safeway Stores, Inc. v. Safeway Discount Drugs, Inc.,* 675 F.2d at 1166–67. In response to interrogatories propounded by Conagra, the defendant reported numerous instances where people, sometimes customers, assumed that defendant's business was affiliated with, or actually was, Singleton Packing.[10] In addition, Conagra introduced evidence that it received inquiries from its distributors about competing direct sales of Singleton products to restaurants and retailers; Singleton Packing made no such direct sales, but Singleton Shrimp Boats did. In short, Conagra established that customers and people in the seafood trade actually confused the defendant's business with that of the plaintiff.

Conagra's proof of actual confusion resulting from the defendant's use of a confusingly similar mark was such strong evidence of likely confusion that the district court could not have reasonably found otherwise. Conagra thus established in the lower court that it had a trademark right to the Singleton name, which preceded the defendant's use of that name, and that the defendant's use of the name led to a likelihood of confusion. Absent any justification for the defendant's infringing use by way of some affirmative defense, Conagra was entitled to protection under § 43(a) of the Lanham Act against the defendant's infringing use.[11]

---

**9.** With regard to the defendant's adoption of a nondescriptive name, such as Singleton, we note that the defendant's action generally would support a finding of intent to trade on the reputation of the plaintiff's business. *See, e.g., Mortellito v. Nina of California, Inc.,* 335 F.Supp. 1288 (S.D.N.Y.1972). In the instant case, however, Robert C. Singleton was using his own name in the shrimp trade. In such a case, the courts are less likely to find intentional infringement. An individual generally will be given some opportunity to use his own name and establish a reputation for that name, even in the face of a prior user's trademark rights in the name, so long as the person using the name distinguishes his business and use of the name from the business owning the trademark rights. *See, e.g., Taylor Wine Co. v. Bully Hill Vineyards, Inc.,* 569 F.2d 731, 735–36 (2d Cir.1978). It appears from the record that Robert C. Singleton did make some attempt to disassociate Singleton Shrimp Boats from his father's business and develop a reputation in the shrimp trade independent from Singleton Packing. Thus, although some facts in the case point to an intent on the part of Singleton Shrimp Boats to ride on the coattails of Singleton Packing, *i.e.,* copying the Singleton Packing labels, the evidence was not alone so strong that the district court would have been compelled to find that the defendant intended to infringe on the Singleton mark. Contrary to Conagra's assertion on appeal, the evidence on intent was not strong enough, *by itself,* to compel a finding of likely confusion. However, even without proof of intent, the evidence on the similarity of the marks and the proof of actual confusion was strong enough to compel such a finding.

**10.** Singleton Shrimp Boats received calls from customers complaining about shrimp purchased from a grocery chain that sold the products of Singleton Packing, not Singleton Shrimp Boats. Suppliers would often call Singleton Shrimp Boats attempting to sell them products under the assumption that Singleton Shrimp Boats was in fact Singleton Packing. Prospective employees had contacted Singleton Shrimp Boats in response to "help wanted" ads placed by Singleton Packing Corporation. Customers had made comments to the defendant that "Conagra had bought out" the defendant's business, when in fact Conagra purchased Singleton Packing. Finally, the defendant had received invoices billing him for purchases that had been made by Singleton Packing.

**11.** This is not to say that Robert C. Singleton must be totally foreclosed from use of his proper surname in the shrimp business. Thus far we have considered only the defendant's actual use of that name, *i.e.,* the prominent display of the Singleton name accompanied only by the descriptive words "Shrimp Boats." We have found this use to be infringing. However, as we have noted, *see supra* note 9, the courts have been reluctant to absolutely prohibit an individual from using his proper name in connection with a business. The important consideration in this context is whether the defendant can use

**1516**

B. *Acquiescence*

The defendant raises the affirmative defense of acquiescence. The district court, as an alternative to its finding of no secondary meaning, found that Conagra's predecessors in interest to the name, Henry C. Singleton and Singleton Packing, had authorized the defendant's use of the name in the shrimp trade and that this authorization precluded Conagra from terminating that use. Conagra does not deny that Henry C. Singleton was aware of and did not object to his son's shrimp businesses using the Singleton name. Conagra further concedes that Singleton Packing was a significant supplier of fresh shrimp to Robert C. Singleton's various businesses. Conagra, however, argues that these facts did not support a ruling that Singleton Packing is now unable to prevent the defendant's continued use of the Singleton trademark.

■■■ A finding of acquiescense, as such, in the defendant's use of the name, was not sufficient to foreclose Conagra's rights to terminate that use. Acquiescence alone is analogous to an implied license to use the name. *Cf. Menendez v. Holt*, 128 U.S. 514, 524, 9 S.Ct. 143, 145, 32 L.Ed. 526 (1888) ("where consent by the owner to use of his trademark by another is to be inferred from his knowledge and silence merely, 'it lasts no longer than the silence from which it springs; it is, in reality, no more than a revocable license.'"). An implied license is generally terminable at the will of the licensor. *Id. See also, University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1045 (3d Cir.), *cert. denied*, 459 U.S. 1087, 103 S.Ct. 571, 74

L.Ed.2d 933 (1982); *PGA v. Bankers' Life & Casualty Co.*, 514 F.2d 665, 670 (5th Cir.1975) (once licensee's right to use the mark is terminated, any subsequent use constitutes infringement). To continue in its use of the Singleton name subsequent to the mark holder's desire to terminate that use, the defendant bore the burden of establishing one of the affirmative defenses of either abandonment or laches leading to equitable estoppel. *See* 3 R. Callman, *The Law of Unfair Competition, Trademarks and Monopolies* § 79.1 (1982). We examine each of these doctrines *seriatim*.[12]

1. *Abandonment*

■■■ The defense of abandonment is one for which we require strict proof. *See Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d at 1545. Under this doctrine:

> Defendants must show that the plaintiff actually abandoned the use of the mark, and, also, that the plaintiff intended to abandon the mark.

*Id.; see also Saxlehner v. Eisner & Mendelson Co.*, 179 U.S. 19, 31, 21 S.Ct. 7, 11, 45 L.Ed. 60 (1900). Permitted infringement on the mark holder's exclusive rights for some period of time does not constitute nonuse of the mark sufficient to support an abandonment. *See United States Jaycees v. Philadelphia Jaycees*, 639 F.2d 134, 139 (3d Cir.1981). Furthermore, the plaintiff's predecessor in the instant case, Singleton Packing, evidenced no intent to abandon the mark; it used the mark continuously and widely over the 25 years preceding the litigation. The doctrine of abandonment

---

the name in a fashion that will not lead to likely confusion with the plaintiff's business, for which the plaintiff has exclusive right to use the Singleton trade name. We do not decide whether the defendant's use of his full name, Robert C. Singleton, or use of the Singleton name with some disclaimer disavowing any affiliation with Singleton Packing, would lead to likely confusion. The district court is free to consider this issue on remand.

12. As we have noted, the district court made no specific findings on either abandonment or laches, although it did grant relief on the defendant's acquiescence claim. We assume *ar-*

*guendo* that abandonment is a fact issue, and we analyze the record to determine whether a finding of abandonment would be clearly erroneous. Laches is an equitable doctrine committed to the sound discretion of the district court and it depends on the careful balancing of several factors. *Environmental Defense Fund, Inc. v. Alexander*, 614 F.2d 474, 477–79 (5th Cir.), *cert. denied*, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). We thus consider the laches defense by analyzing the underlying factors under the clearly erroneous standard, and assuming *arguendo* that the lower court exercised its discretion in affording the defendant relief on this claim.

generally applies only when the plaintiff mark holder relinquishes his exclusive rights to the world, not merely to a single user, *see Dawn Donut Co. v. Hart's Food Stores, Inc.*, 267 F.2d 358, 363 (2d Cir.1959) (abandonment occurs only when mark holder fails to use its mark anywhere in the nation) [13]; the latter case is more appropriately classified as a license. *See Menendez v. Holt*, 128 U.S. at 524, 9 S.Ct. at 145. A finding that Henry C. Singleton and Singleton Packing, as Conagra's predecessors, abandoned the mark would have been clearly erroneous in light of the evidence at trial.

### 2. *Laches Leading to Estoppel*

The question of laches, which can lead to estoppel of the plaintiff's exclusive claim to use the mark, creates a much closer issue on the facts of this case. The laches defense requires proof of three elements: (1) a delay in asserting a right or claim; (2) that the delay was not excusable; and (3) that the delay caused the defendant undue prejudice.[14] *Environmental Defense Fund v. Alexander*, 614 F.2d 474, 478 (5th Cir.), *cert. denied*, 449 U.S. 919, 101 S.Ct. 316, 66 L.Ed.2d 146 (1980). The test for laches or estoppel is flexible, requiring a careful examination of both the delay and the prejudice caused by that delay. *See Citibank, N.A. v. Citibanc Group, Inc.*, 724 F.2d at 1546.[15] In addition, a court determining whether the doctrine of laches estops the plaintiff from asserting its rights also must consider the public's interest in the trademark as a definite designation of a single source of the goods. Thus, although a defendant suffers some prejudice, the public interest in avoiding confusion might outweigh that prejudice. *See James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 572 F.2d 574, 578 (7th Cir.1978).

To properly consider the laches defense in the instant case, we must separate the two aspects of the defendant's business. We conclude that laches defense cannot support the defendant's continued use of the Singleton name in connection with the sale of processed shrimp. A contrary finding by the district court would have been an abuse of discretion. The defendant's continued use of the name in connection with the sale of fresh shrimp, however, requires a remand to the district court for more detailed consideration of the laches defense.

With regard to the defendant's use of the Singleton mark in the sale of processed shrimp, there was complete justification for the delay; in effect, there was no acquiescence. The father did not become aware of the defendant's direct competition in the processed shrimp market until after this lawsuit began. Thus, the evidence in the case does not support a finding that Singleton Packing inexcusably delayed in asserting its exclusive right to the Singleton mark as it related to the defendant's sale of processed shrimp. *See supra* note 12 (facts underlying laches defense reviewed under clearly erroneous standard). Because one of the requisite elements of the defense was not met, a finding of laches with respect to processed shrimp would be an abuse of discretion.

The defendant's use of the Singleton name for his sales of fresh shrimp presents a more difficult question. The facts gov-

---

**13.** We discuss a narrow exception to this general rule *infra* at note 15, and find that exception inapplicable in the instant case.

**14.** With regard to the prejudice factor, a defendant's intent to wrongfully infringe on the plaintiff's mark undermines the weight to be given this factor. *See University of Pittsburgh v. Champion Products, Inc.*, 686 F.2d 1040, 1044 n. 14 (3d Cir.1982).

**15.** In *University of Pittsburgh v. Champion Products, Inc.*, the court noted that the laches de-

fense actually consists of two classes of cases: one in which the plaintiff's delay has been so outrageous, unreasonable, or unexcusable as to constitute virtual abandonment, and a second, more common class of cases, in which the delay is not so unreasonable and the defendant must show the type of prejudice leading to estoppel. 686 F.2d at 1044–45. The instant case falls into this second class of cases and thus the list of factors set forth above properly govern the analysis of this defense.

erning the lower court's discretion on this issue are not clearly apparent from the record and we are unable to determine whether application of the laches doctrine to this aspect of the defendant's business would constitute an abuse of discretion.

The defendant's father was aware of his son's use and prominent display of the Singleton name in various shrimp businesses for over 10 years. The corporate defendant, Singleton Shrimp Boats, began operations in 1978. Thus, it can properly be said that the father delayed in asserting his exclusive rights to the name.[16] This delay was accompanied by encouragement in the form of sales to the defendant by Singleton Packing on an established line of credit. *See, e.g., Ambrosia Chocolate Co. v. Ambrosia Cake Bakery,* 165 F.2d 693, 695 (4th Cir.1947) (sales of raw materials by the plaintiff mark holder to the defendant infringer deemed relevant to the defendant's permissive use of the mark). In addition, with regard to fresh shrimp sales, no justification for the delay appears in the record.

With regard to the prejudice issue, the record shows that Robert C. Singleton and Singleton Shrimp Boats spent $120,000 from 1978 until 1981 advertising the business. All of the advertising clearly and prominently displayed the Singleton name. However, we cannot determine from the record how much of that advertising was directly related to fresh shrimp sales, rather than the nonconsensual use of the Singleton name on copied labels or advertising related to processed shrimp products, which could not properly be considered in evaluating the defendant's prejudice. There is little evidence in the record on which we could base a conclusion regarding the detriment the defendant would suffer from a change in name. Moreover, the case before us lacks any factfindings regarding the issue of the defendant's intent

in using the Singleton name in his fresh shrimp business. *See supra* note 14.

Finally, although the evidence in the record clearly showed likely confusion stemming from the defendant's use of the Singleton name, we cannot determine whether this confusion would persist if that use was limited to fresh shrimp sales, and whether public confusion from such use would outweigh the prejudice to the defendant.

Careful consideration of these factors, the possible need for additional evidence, the finding of facts on the elements of the laches defense, and the sound exercise of discretion based on the facts are matters best left to the district court on remand.

## IV. CONCLUSION

We have concluded that Conagra possesses trademark rights in the name "Singleton," because that name has acquired secondary meaning among consumers. The district court's finding to the contrary was clearly erroneous. We have further concluded, based primarily on the evidence of actual confusion, that the defendant's use of the Singleton name in connection with Singleton Shrimp Boats infringes on Conagra's trademark rights to that name and causes likely confusion.

With regard to the acquiescence defense, we have determined that a finding of abandonment would be clearly erroneous on these facts. We have further determined that the laches defense cannot apply to authorize the defendant's continued use of the Singleton name in connection with his sales of processed shrimp. The laches defense may apply, however, to permit the defendant's continued use of the Singleton name in connection with fresh shrimp sales. We therefore remand to the district court

---

**16.** The proof at trial showed that the defendant's use of the Singleton name was not continuous over the 10-year period. Singleton Seafood Center, which the individual defendant operated from 1972 to 1977, was a distinct business from Singleton Shrimp Boats in its operation, location, and facilities. For over 6 months after Singleton Seafood Center ceased operation, Robert C. Singleton was not engaged in the shrimp trade. The court on remand must decide whether there was sufficient connection between the two businesses to support a finding that Singleton Shrimp Boats, a business formed in 1978, can assert the prior existence of Singleton Seafood Center in support of its continued right to use the Singleton name.

for purposes of determining whether, upon balancing the factors we have discussed and any additional evidence the court may wish to consider, the defendant sufficiently established a laches defense that estops Conagra from preventing his use of the Singleton name in connection with the sale of fresh shrimp.

We also leave to the district court's determination the proper scope of injunctive relief, consistent with its finding on the laches issue and our holding that the defendants may not use the Singleton trademark in connection with sales of processed shrimp. In molding its injunctive order, the district court is free on remand to consider whether the defendant might be able to continue using his surname, both in connection with fresh and processed shrimp, but in a fashion not likely to cause confusion with Singleton Packing's exclusive rights to that name. *See supra* notes 9 and 11.

The case is REVERSED and REMANDED with instructions.