BIRCH, Circuit Judge,
specially concurring:
The majority has found the district court’s analysis and development wanting. Since I am convinced that simply remanding the case to the district judge without any comment may result in future problems, I have succumbed to temptation and will endeavor to provide some observations relative to the issues presented in this complex case. The parties and the district court may well choose to ignore these offerings, but hopefully, all concerned may find them to be of some benefit in reaching a resolution of this conflict.
I.
A.
The district court found that over the past few years, Sun Life of Canada and SunAmer-ica have been “engaged in providing similar [insurance] products and services, through similar trade channels to similar customers, often through similar advertising media.” R15-137-13. This was not always the case. Sun Life of Canada is the older and larger of the companies. Founded in Canada in 1865, Sun Life of Canada began operations in the United States in 1895, and it is not disputed that it was the first user of a “Sun Life” mark for insurance products in this country. From its inception, Sun Life of Canada has promoted and sold a variety of insurance products to investment-oriented clients, including traditional life insurance, immediate annuities, and deferred annuities.
Although the current subsidiary of Sun-America was founded in Maryland in 1890, the company did not operate under the name Sun Life Insurance Company of America until 1916. Sun Life of America was always smaller and more specialized. Throughout most of its history, Sun Life of America’s business was primarily constituted by the sale of basic mortality-based life insurance to industrial workers in the Middle-Atlantie states. Despite the similarity of names, then, Sun Life of Canada and Sun Life of America coexisted peacefully for much of their history, apparently because they sold different products in different markets to different clients. Both parties admit to this harmonious coexistence. In fact, relations were so cordial that “[i]n every circumstance in which the two companies sought to expand into the same states, the first registered company, typically Sun Life of Canada, gave its consent to the newly-entering company seeking registration.” R15-137-3.
Beginning in the early 1970s, seeds of tension were planted. Sun Life of Canada created its American subsidiary, Sun Life of Canada (U.S.), and began occasional abbreviation of that name to “Sun Life (U.S.)” in 1973. Sun Life of Canada also began exploring new means of distribution for its products; in particular, the lucrative channels of national and regional stock brokerage firms and broker-dealers. In 1978, Sun Life of Canada contracted with Merrill Lynch for the distribution of annuities. In 1982, Sun Life of Canada acquired Massachusetts Financial Services Company (“MFS”), one of the largest investment advisors in the United States. By 1983, then, Sun Life of Canada and Sun Life of Canada (U.S.) were marketing insurance products via brokerage houses and broker-dealers utilizing the name, at least to some extent, “Sun Life (U.S.).”
The early 1970s were also the origins of change for Sun Life of America. The conglomerate Kaufman & Broad, Inc. (“Broad Inc.”) acquired Sun Life of America in 1973. Under the direction of Broad Inc., Sun Life of America began to modernize and expand. By the end of the 1970s, Sun Life of America had experimented with different products, different distribution channels, and different clients. In particular, Sun Life of America began experimenting with the sale of annui *1341 ties, through broker-dealers, to investment-oriented clients. By the early 1980s, the seeds of tension were beginning to take root. Sun Life of Canada (U.S.) was sprouting with a shortened name; Sun Life of America was sprouting with a different business. The clash was almost inevitable.[1]
Sun Life of America first protested Sun Life of Canada’s use of the mark SUN LIFE (U.S.) in June 1983. Sun Life of Canada declined to stop its use of the shortened name of its American subsidiary. Before. Sun Life of America objected again in 1988, Sun Life of Canada had sold some 4 billion dollars worth of innovative annuity products, designated (at least in part) by the mark SUN LIFE (U.S.), through MFS and other brokerage houses and broker-dealers. On the other side of this developing conflict, Sun Life of America continued its transformation into a company that would also sell annuities to investment-oriented clients through broker-dealer channels of distribution. In 1984, Sun Life of American began its first significant development and marketing of annuity products. Sun Life of America would shortly acquire several brokerage firms. Sun Life of Canada claims that by the end of 1989, Sun Life of America had completely abandoned its origins — selling mortality-based life insurance to industrial workers in the Middle-Atlantic states — in favor of a sophisticated and revamped insurance business that competed directly with Sun Life of Canada.
Shortly after Sun Life of America adopted its new name in 1916, Sun. Life of Canada wrote the following in a letter to Sun Life of America: “Under the circumstances, there is nothing to be done in the matter, but to endeavor as far as possible, to avoid any confusion through this similarity of names.” R15-137-3. In June 1989, the endeavoring ended and the litigation began.
B.
SunAmeriea’s lawsuit asserted various state and federal claims against Sun Life of Canada. However, only SunAmerica’s trademark claim concerning Sun Life of Canada’s use of SUN LIFE (U.S.) is at issue in this appeal.[2] SunAmerica’s principal allegation with respect to this claim is that the use of SUN LIFE (U.S.) falsely suggests to the public that Sun Life of Canada’s insurance products originate with SunAmeriea, in violation of SunAmerica’s trademark rights under section 43(a) of the Lanham Act. See 15 U.S.C. § 1125(a) (1988).
In addition to responding to SunAmerica’s allegations, Sun Life of Canada counterclaimed. The counterclaim relevant to this appeal[3] contended that
Sun Life of Canada began using its name SUN LIFE OF CANADA in the United States many years before plaintiffs began using SUN LIFE OF AMERICA, that plaintiffs’ usage of SUN LIFE OF AMERICA has caused, and is likely to cause, confusion with defendants’ SUN LIFE OF CANADA name, and that plaintiffs should therefore be enjoined from all further use of the SUN LIFE OF AMERICA name and any other name or mark containing the salient words SUN LIFE.
Appellants’ Br. at 3. Although no party moved for summary judgment with respect to Sun Life of Canada’s counterclaim, both parties submitted cross motions for summary judgment with respect to SunAmerica’s challenge to the use of SUN LIFE (U.S.).
The district court granted summary judgment to SunAmeriea. The trial court quickly found a likelihood of confusion based upon an *1342 analysis of the marks at issue. Echoing this circuit’s seven-factor test for likelihood of confusion, see Dieter v. B & H Indus., 880 F.2d 322, 326 (11th Cir.1989), cert. denied, 498 U.S. 950, 111 S.Ct. 369, 112 L.Ed.2d 332 (1990); Jellibeans, Inc. v. Skating Clubs, 716 F.2d 833, 840 (11th Cir.1983), the district court ruled that there was a risk of confusion because SUN LIFE (U.S.) could be considered “synonymous” with SUN LIFE OF AMERICA. In support of its finding, the court cited the companies’ now similar products, distribution channels, clients, and advertising, as well as evidence of actual confusion. See R15-137-13-14. Accordingly, the court permanently enjoined Sun Life of Canada from using SUN LIFE (U.S.) standing alone in any advertisements, promotional materials, press releases or other materials. Sun Life of Canada’s counterclaim — asserting that SunAmerica had no enforceable rights in any “Sun Life” mark whatsoever-remained pending.
II.
A.
Sun Life of Canada contends that the district court improperly granted a permanent injunction without first completely resolving the issues raised by the counterclaim:
[T]he District Court’s summary judgment injunction should be reversed because it is based on the invalid assumption that plaintiffs have a continuing right to use the name SUN LIFE OF AMERICA. Defendants’ counterclaim ... asserts that the confusion between the parties is caused by the fact that their full names both begin with SUN LIFE, that defendants admittedly used SUN LIFE OF CANADA long prior to plaintiffs’ first use of SUN LIFE OF AMERICA, and that the only effective way to prevent confusion is to enjoin plaintiffs, the junior users of a SUN LIFE name, from all further use of SUN LIFE OF AMERICA. If defendants prevail on this claim at trial, the sole basis for the summary judgment injunction — the finding that defendants’ use of SUN LIFE (U.S.) is likely to be confused with plaintiffs’ use of SUN LIFE OF AMERICA — will be eliminated.
Appellants’ Br. at 23. I agree with Sun Life of Canada.
An explicit determination of the issues raised by Sun Life of Canada’s counterclaim was required before the district court could properly enter a permanent injunction in favor of SunAmerica. SunAmerica’s claim was based upon section 43(a) of the Lanham Act, which provides in relevant part:
Any person who, on or in connection with any goods or services, ... uses in commerce any word, term, name, symbol, or device, ... which
(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person, or
(2) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person’s goods, services, or commercial activities,
shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.
15 U.S.C. § 1125(a) (1988). This court has repeatedly held that in order to be entitled to injunctive relief under section 43(a) of the Lanham Act, a plaintiff must establish both “(1) that it has trademark rights in the mark or name at issue ... and (2) that the defendant adopted a mark or name that was the same, or confusingly similar to the plaintiffs mark, such that there was a likelihood of confusion....” ConAgra, [Conagra] Inc. v. Singleton, 743 F.2d 1508, 1512 (11th Cir.1984) (citation omitted); see Investacorp, Inc. v. Arabian Inv. Banking Corp., 931 F.2d 1519, 1521-22 (11th Cir.), cert. denied, 502 U.S. 1005, 112 S.Ct. 639, 116 L.Ed.2d 657 (1991); American Television and Communications Corp. v. American Communications and Television, Inc., 810 F.2d 1546, 1548 (11th Cir.1987). Sun Life of Canada’s counterclaim undertakes directly to refute the existence of the first element that SunAmerica must establish under section 43(a) — that *1343 SunAmeriea has enforceable trademark rights in the mark or name SUN LIFE OF AMERICA. By skipping to the confusion issues and failing to rule explicitly on Sun-America’s right to use any “Sun Life” mark, the district court issued a permanent injunction that was premature.
As the moving party, Sun Life of America was required to establish that there was no genuine issue of material fact about its right to use SUN LIFE OF AMERICA and that it was entitled to judgment as a matter of law on that issue. Fed.R.Civ.P. 56(c); see Celo-tex Corp. v. Catrett, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). The district court did not make a specific ruling on the precise issue of Sun Life of America’s right to use “Sun Life” in light of Sun Life of Canada’s counterclaim. Indeed, the court did not make any specific findings of fact or conclusions of law with respect to this matter. Although, generally, a district court may not be required to make such findings and conclusions in support of summary judgment rulings, see Fed.R.Civ.P. 52(a), the cases have stressed the importance of such findings to facilitate meaningful appellate review. See, e.g., Clay v. Equifax, Inc., 762 F.2d 952, 956-58 (11th Cir.1985); Hanson v. Aetna Life & Casualty; 625 F.2d 573, 575-76 (5th Cir.1980).
SunAmeriea claims that the district court did reach a decision on the issues raised by Sun Life of Canada’s counterclaim. I do not agree. The district court did give isolated commentary about Sun America’s right to use “Sun Life,” but I do not consider this commentary to be an adequate disposition of these issues. Sun Life of Canada’s counterclaim and its impact upon SunAmerica’s entitlement to a permanent injunction was not specifically addressed by the district court. On this particular record, then, one cannot discern whether the district court ruled, after a full and fair consideration of the issue, that Sun Life of America has a protectible trademark interest in the use of “Sun Life.” Perhaps just as important, even assuming the district court did rule on the issue, the court’s factual and legal bases for doing so are unclear, making appellate review of the purported decision difficult if not impossible.
B.
I am not convinced that the district court’s isolated commentary on the issues raised by Sun Life of Canada’s counterclaim constituted a ruling on the subject, that commentary persuades me to further delineate and describe the precise issues that will likely confront the district court on remand. The district court’s discussion evinces the need for doctrinal moorings. In suggesting that Sun-America has enforceable rights in SUN LIFE OF AMERICA, the district court stated that Sun Life of Canada was precluded from challenging the use of SUN LIFE OF AMERICA because it had permitted another party to use that mark for such a long period of time. The district court sporadically invoked various legal doctrines in support of its suggestion, but did not expand upon the elements of any one. See R15-137-14 (acquiescence); id. (equitable estoppel); id at 15 (laches); id. at 26 (waiver). Moreover, the district court did not rely upon any trademark ease law in touching upon the issues raised by Sun Life of Canada’s counterclaim. I believe that a more methodical approach, complete with an analysis of the issues as clarified by this circuit’s trademark jurisprudence, is essential in this case. Resolution of complex intellectual property issues is seldom properly accomplished in a broad and conclusory opinion format.
With respect to the issues raised by Sun Life of Canada’s counterclaim, the starting point must be Sun Life of Canada’s ability to establish a prima facie case under section 43(a) of the Lanham Act.[4] Once *1344 again, pursuant to the case law established in this circuit, Sun Life of Canada is required to demonstrate both that it enjoys enforceable rights in its SUN LIFE OF CANADA mark and that Sun Life of America’s use of SUN LIFE OF AMERICA generated a likelihood of confusion. E.g., Con-Agra [Conagra], 743 F.2d at 1512. With respect to the first factor, Sun Life of Canada would need to demonstrate not only its first use of the unregistered mark,[5] but also that it acquired a protectible interest in SUN LIFE OF CANADA (or the shortened form SUN LIFE [6]), either because the mark is inherently distinctive or because the mark has acquired secondary meaning. E.g., In-vestacorp, 931 F.2d at 1522. With respect to the confusion issue, the district court’s analysis should once again be guided by the seven-factor test utilized in cases like Dieter and Jellibeans.
 Only after first discerning the extent of Sun Life of Canada’s protectible interest and any likelihood of confusion should the district court proceed to an analysis of SunAmeriea’s potential affirmative defenses. Although the district court loosely characterized SunAmerica’s putative defense, it appears from the record that in all probability SunAmerica’s defense sounds in acquiescence. The distinguishing feature of the acquiescence defense is the element of active or explicit consent to the use of an allegedly infringing mark. Coach House Restaurant v. Coach and Six Restaurants, 934 F.2d 1551, 1558 (11th Cir.1991). SunAmerica has clearly claimed that Sun Life of Canada granted SunAmerica express permission to use the SUN LIFE OF AMERICA mark; demonstrated, for example, by Sun Life of Canada’s aid in helping Sun Life of America clear the hurdles imposed by the insurance regulators of various states.[7]
SunAmerica can establish an acquiescence defense only if it shows:
(1) That [Sun Life of Canada] actively represented that it would not assert a right or a claim;
(2) that the delay between the active representation and assertion of the right or claim was not excusable; and
(3) that the delay caused [Sun Life of America] undue prejudice.
Coach House, 934 F.2d at 1558.[8] Acquiescence would estop Sun Life of Canada from extinguishing SunAmerica’s use of SUN LIFE OF AMERICA, unless there is an inevitability of confusion between the two marks. Id. at 1564. I express no opinion on SunAmerica’s ability to establish this defense to Sun Life of Canada’s counterclaim. I note only that the court’s analysis of the first and third elements should be straightforward based upon the evidence in the record; ac *1345 cordingly, I will not comment further on those elements. However, I believe that the second element requires additional guidance.
In determining whether or not a pri- or user’s delay is “excusable,” the district court must not limit itself solely to a raw calculation of the time period involved. Rather, the court should also examine the reasons for any delay. In the context of this case, Sun Life of Canada has at least advanced a colorable excuse: Sun Life of Canada contends that it had no reason to assert an early challenge to Sun Life of America’s use of a “Sun Life” mark because until 1989, Sun Life of America sold different products in a different market through different distribution channels. Moreover, it may be that Sun Life of Canada could not have successfully prosecuted an earlier infringement challenge because until Sun Life of America changed its business, there was negligible likelihood of confusion. Pursuit of an infringement action may have been futile. Once again, I express no opinion on whether or not any delay on the part of Sun Life of Canada was “excusable.” “Careful consideration of these factors, the possible need for additional evidence, the finding of facts on the elements of the ... defense, and the sound exercise of discretion based on the facts are matters best left to the district court on remand.” ConAgra [Conagra ], 743 F.2d at 1518.
C.
Citing Forum Corp. v. Forum Ltd,., 903 F.2d 434 (7th Cir.1990), Sun Life of Canada argues that this is an easy case simply because Sun Life of America is admittedly the junior user of a “Sun Life” mark. Sun Life of Canada contends that because Sun Life of America is a second comer, it has a continuing duty to avoid confusion with the first user’s mark. Moreover, Sun Life of Canada presses, Sun Life of America’s duty to avoid confusion exists even when the first user shortens or abbreviates its mark. In essence, Sun Life of Canada contends that Sun Life of America has acted at its peril since adopting a “Sun Life” mark in 1916.
The theory argued by Sun Life of Canada is legally cognizable, but only to a point. There is ample support for the proposition that a second user of a mark has a duty to avoid confusion with a first user’s mark. In the words of Professor McCarthy:
It is well-settled that one who adopts a mark similar to the mark of another for closely related goods acts at his peril and any doubt there might be must be resolved against him. If there is evidence that the junior user in fact knew of the senior user’s mark before beginning use, the “acting at one’s peril” rationale finds stronger support.
2 J. Thomas McCarthy, Trademarks and Unfair Competition § 23:21, at 106-07 (2d ed. 1984) (footnotes omitted). The second comer’s duty to avoid confusion also requires the second comer to anticipate the possibility that the senior user will shorten or abbreviate its mark to its salient portions. For example, in Forum Corp., the Seventh Circuit held the junior user of a mark responsible for avoiding confusion even though the senior user had abbreviated its name:
It is the second user’s responsibility to avoid confusion in its choice of a trademark, and that responsibility must include choosing a mark whose salient portion would not likely be confused with a first user’s mark....
... [E]ven if [senior user The Forum Corporation of North America] had shortened the form of its trademark throughout the years, [junior user The Forum, Ltd.] would not be freed from its responsibility to avoid confusion since the salient and memorable feature of [the senior user’s] mark is “Forum.”
903 F.2d at 440, 441; cf. E. Remy Martin & Co. v. Shaw-Ross Int’l Imports, Inc., 756 F.2d 1525, 1531 (11th Cir.1985) (shortening REMY MARTIN to “Remy”); Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1179 (9th Cir.1988) (shortening CENTURY 21 to “Century”).
However, the duty to avoid confusion takes a different hue if the first user has actively permitted the second comer’s use of a mark containing a salient portion of the senior user’s mark. In other words, if the *1346 first user of a trademark affirmatively acquiesces to a second user’s adoption and use of a mark that contains the memorable aspect of the first user’s mark, the senior user cannot later complain that the second comer’s mark creates confusion with an anticipated or actual abbreviation of the first user’s mark. Ti-ue, in Forum Corp., senior user The Forum Corporation of North America could hold junior user The Forum, Ltd., accountable for the confusion resulting from the senior user’s abbreviation to “The Forum,” but only because the junior user had no permission or right to incorporate into its own mark the salient aspect of the senior user’s mai'k. But The Forum Corporation of North America could not affirmatively acquiesce to a second comer’s use of “The Forum, Ltd.” and then change its own name to “The Forum, Ltd.” after an inexcusable delay accompanied by undue prejudice.[9] See supra pp. 1344-45. Similarly, Remy Martin could, not consent to another cognac’s use of “Remy Smith” and then adopt for itself the name “Remy Smith,” and Century 21 could not acquiesce to the use of “Century 42” only to later appropriate “Century 42” for itself.
Accordingly, if the junior user can establish the three requisite elements of an acquiescence defense, then the duty to avoid confusion becomes mutual. Typically, where the senior user acquiesces to the junior user’s mark, the senior user is estopped from challenging that mark under section 43(a) of the Lanham Act. It follows that the senior user should also be estopped from adopting the junior user’s mark for itself and from changing its own mark in a manner that significantly heightens the risk of confusion. After acquiescence, the senior user and the junior user must treat one another’s marks with equal dignity.
In the context of this dispute, then, the fact that Sun Life of America is the junior user of a “Sun Life” mark is dispositive only if Sun Life of Canada has not acquiesced to the use of SUN LIFE OF AMERICA. Absent Sun Life of Canada’s affirmative acquiescence, Sun Life of America would have a duty to avoid confusion with Sun Life of Canada’s mark, including the duty to anticipate both the shortening of SUN LIFE OF CANADA to SUN LIFE and the designation of Sun Life of Canada’s subsidiary in America as SUN LIFE (U.S.). If Sun Life of Canada has acquiesced to the use of SUN LIFE OF AMERICA, however, Sun Life of Canada also has a duty to respect that mark and avoid creating confusion with it. Once again, I express no opinion on the acquiescence defense. As this issue will require a careful, fact-intensive consideration, I shall leave it for the district court and its informed discretion on remand. See ConAgra [Cona-gra, ], 743 F.2d at 1518.
III.
Because the majority has vacated the permanent injunction for the reasons stated above, I need not review the specifics of the district court’s resolution of SunAmerica’s challenge to Sun Life of Canada’s use of SUN LIFE (U.S.). However, my review of the record again indicates the need for doctrinal guidance and the necessity of a methodical approach.
The starting point for the analysis of the claim that SUN LIFE (U.S.) is confusingly similar to SUN LIFE OF AMERICA is, once again, whether or not SunAmerica can establish a prima facie case under section 43(a) of the Lanham Act. As indicated above, the case law requires SunAmerica to establish (1) that it has a protectible trademark interest in SUN LIFE OF AMERICA, and (2) that Sun Life of Canada’s use of the mark SUN LIFE (U.S.) creates a likelihood of confusion with SUN LIFE OF AMERICA. With respect to the first element, Sun-America must not only survive Sun Life of Canada’s counterclaim, see supra p. 1342, but also establish the acquisition of protectible trademark rights, either because SUN LIFE OF AMERICA is inherently distinctive or because it has acquired secondary meaning. See Investacorp, 931 F.2d at 1522. With *1347 respect to confusion, the district court’s analysis should again follow the seven-factor test as established in cases like Dieter and Jelli-beans to determine whether or not Sun Life of Canada’s use of SUN LIFE (U.S.) creates a likelihood of confusion with SUN LIFE OF AMERICA.
I think it also prudent to address Sun Life of Canada’s “causation” argument. Sun Life of Canada argues repeatedly on this appeal that the “cause” of public confusion (if any) is not its use of SUN LIFE (U.S.), but the combination of SunAmerica’s use of a mark that begins with “Sun Life” and Sun-America’s relatively recent entrance into the business of selling annuities through broker-dealers. Sun Life of Canada is certainly correct in pointing out that the only reason the change in geographical designation might make a difference is that in this case, both parties have operated under names that begin with “Sun Life.”
Nevertheless, historical similarities occasioned by the parties’ dual use of “Sun Life” would not necessarily disqualify Sun Life of America from obtaining an injunction. Should the district court find it necessary to reach the issue of whether or not SUN LIFE (U.S.) is confusingly similar to SUN LIFE OF AMERICA, it will only be because there has been a prior finding that SunAmeriea has a protectible trademark interest in SUN LIFE OF AMERICA and that Sun Life of Canada has acquiesced to that interest. At such a point, SunAmerica’s mark and Sun Life of Canada’s mark would stand in parity. Under these circumstances, even if Sun Life of America then took advantage of industry trends by shifting to the sale of annuities through broker-dealers, it would be entitled to assume that no party would take further steps that would generate a greater likelihood of confusion than that which previously existed at the time of acquiescence. Therefore, if SunAmeriea has enforceable rights in SUN LIFE OF AMERICA, it is not fatal to SunAmerica’s claim that a “but-for” cause of public confusion might be SunAmerica’s expansion into annuity products and the broker-dealer markets, or that there may have been residual similarities stemming from the parties’ respective uses of “Sun Life” for 75 years. As long as the district court finds, based upon a careful analysis of the evidence, that Sun Life of Canada’s use of SUN LIFE (U.S.) now creates an additional likelihood of con fusion, an injunction will lie.[10]
Finally, after resolving the issues raised by Sun Life of Canada’s counterclaim and reaching a decision as to whether SunAmeriea can establish a prima facie case under section 43(a), the district court should consider the two affirmative defenses proffered by Sun Life of Canada — laches and acquiescence. The trial court may not have understood that Sun Life of Canada’s affirmative defenses focus upon a different time period than Sun-America’s apparent defense to the counterclaim. Sun Life of Canada’s defenses focus not upon the long history of the two companies, but upon the relatively shorter period of time that Sun Life of Canada has been utilizing the mark SUN LIFE (U.S.).
Sun Life of Canada first argues that SunAmeriea should be estopped from contesting the use of SUN LIFE (U.S.) because SunAmeriea had actual knowledge of the use of SUN LIFE (U.S.) in 1982, yet waited until June 1989 to file suit, after Sun Life of Canada sold 4 billion dollars of products under the SUN LIFE (U.S.) mark. Such delay, Sun Life of Canada contends, constitutes laches. To establish this defense, Sun Life of Canada must prove:
(1) a delay in asserting a right or a claim,
(2) that the delay was not excusable, and
(3) that there was undue prejudice to the party against whom the claim is asserted.
Ambrit [AmBrit], Inc. v. Kraft, Inc., 812 F.2d 1531, 1545 (11th Cir.1986), cert. denied, 481 U.S. 1041, 107 S.Ct. 1983, 95 L.Ed.2d 822 (1987). Stated differently, SunAmeriea is only estopped from asserting its SUN LIFE (U.S.) claim if Sun Life of Canada demonstrates that it suffered undue prejudice while *1348 SunAmerica inexcusably delayed in asserting its rights. While I express no opinion on the laches argument, I anticipate that the district court will consider all of the relevant facts and circumstances before reaching a conclusion on this equitable defense.
Sun Life of Canada next alleges that SunAmerica should be estopped from contesting the use of SUN LIFE (U.S.) because SunAmerica implicitly acquiesced to the use of SUN LIFE (U.S.) by acting as an agent of Sun Life of Canada and selling Sun Life of Canada’s products under the name SUN LIFE (U.S.). Put another way, Sun Life of Canada contends that by selling products designated by SUN LIFE (U.S.), SunAmerica implicitly consented to Sun Life of Canada’s use of that specific mark (even if potentially confusing). To establish this acquiescence defense, Sun Life of Canada would need to establish the three elements identified above: active representation, inexcusable delay, and undue prejudice. See supra pp. 1347-48. I note for the district court that an “active representation” need not come via a “specific endorsement” or formal agreement, see R15-137-16; rather, implied acquiescence may be inferred from a clear encouragement of the use of the allegedly infringing mark, as when, for example, the plaintiff substantially contributes to the marketing of the allegedly infringing products. See, e.g., Coach House, 934 F.2d at 1563-64; ConAgra [Conagra], 743 F.2d at 1516-18; Land O’Lakes, Inc. v. Land O’Frost, Inc., 224 U.S.P.Q. 1022, 1029-30 (TTAB 1984); Hitachi Metals Int’l v. Yamakyu Chain Kabushiki, 209 U.S.P.Q. 1057, 1067 (TTAB 1981). Once again, in deciding this issue, the district court should carefully consider SunAmeriea’s proffered reasons for its alleged acquiescence and delay. See supra pp. 1344-45.
IV.
SunAmerica has described this case as “open-and-shut” because Sun Life of Canada has allegedly used an identical mark for competitive products. See Appellees’ Br. at 4 n. 2 (citing 2 J. Thomas McCarthy, Trademarks and Unfair Competition § 23:3, at 56 (2d ed. 1984)). As evidenced by my discussion, I am unpersuaded as to that conclusion. This case has a complex and unique history that spans over 100 years. Both parties to this dispute have persuasive claims, counterclaims, and defenses. All are interrelated. All require not only a careful analysis of each party’s trademarks, products, markets, clients, and distribution channels, but also an analysis of how circumstances may have changed over time. Arguably, in this ease, convergence has created competition and confusion. Only precise, step-by-step detailed analysis can illuminate an appropriate resolution that is capable of meaningful appellate review. To suggest otherwise ignores the complexity and subtlety presented in this case.

. Two attempts to pretermit the clash failed. An agrccmcnl reached in 1980 — providing for the inclusion of the geographic modifiers "of Canada” and "of America” — was limited to specified names and marks. A broader "understanding” about the inclusion of geographic modifiers was reached in 1982, but this understanding was never formalized.

. SunAmeriea also challenged (1) Sun Life of Canada's adoption of a new "S” logo that allcg-cdly infringes SunAmerica’s "S” logo, (2) Sun Life of Canada’s use of the name "Sun Financial Group” that allegedly infringes SunAmcrica’s use of "Sun Financial Services,” and (3) the continuing vitality of various other Sun Life of Canada marks.

.Sun Life of Canada also challenged (1) SunAm-crica’s "S” logo, and (2) SunAmcrica’s right to use the name "SunAmeriea.”

. Sun Life of Canada registered SUN LIFE OF CANADA in 1967. However, such a registration would not defeat Sun Life of America’s prior rights (if any) created by its long prior use of SUN LIFE OF AMERICA. See 15 U.S.C. §§ 1065, 1051 (1988).
Sun Life of Canada has also registered the following "Sun” marks:
SUN LIFE OF CANADA 1967
FOLLOW THE SUN FOR LIFE 1967
SUN FUND 1971
SUN FUND (plus design) 1971
SUN PLAN 1981
SUN LIFE OF CANADA (stylized) 1981
SUN LIFEMASTER 1984
*1344 SUNPLAN 2 1984
SUN INTERESTMASTER 1985
SUN PENSIONMASTER 1985
SUN INTERESTMASTER-Q 1985
SUN EXECUMASTER 1986
SUN ULTRATERM 1987
SUN FINANCIAL GROUP 1987
SunAmerica has only registered its name "Sun-America.”

. Apparently, Sun Life of Canada was the first user of a "Sun Life” mark in 45 of the 50 states.

. Sun Life of Canada’s mark may have been occasionally abbreviated to just SUN LIFE as early as 1914.

. The laches defense is associated with more passive consent, usually demonstrated by a long period of silence. Coach House, 934 F.2d at 1558. Although "estoppel” or "estoppel by lach-es" is sometimes used in the trademark area, the district court appears to have borrowed its "cqui-table estoppel” language from the workers' compensation context, as evidenced by the court's citation to DeShong v. Seaboard Coast Line R.R., 737 F.2d 1520 (11th Cir.1984). The district court’s invocation of "waiver” has no trademark roots.

.Sun Life of Canada's arguments on appeal imply that even if SunAmerica could establish these three elements of an acquiescence defense, Sun Life of Canada could still "revoke” its acquiescence because acquiescence is merely an "implied license” to use a mark. See ConAgra [Con-agra], 743 F.2d at 1516. I disagree. ConAgra [Conagra] stated that "[acquiescence alone is analogous to an implied license to use the name.” Id. (emphasis added). By this, the court meant that if only the first element is established — active consent — then the permission is revocable. Once the remaining elements of acquiescence arc established, however, the permission is not revocable. Id. at 1516-18; see also Coach I-Iouse, 934 F.2d at 1558 & n. 18, 1563-64.

. Again, this discussion must always be viewed against the backdrop of the likelihood of confusion determination, which necessarily involves an analysis of the seven-factor test; including, for example, similarity of products, channels of commerce and advertising media.

. Sun Life of Canada also contests the admissibility and authenticity of certain evidence before the district court. I express no opinion on this issue. I trust that on remand, the district court will ascertain that the evidence it considers is admissible and authentic.