[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 18-14092
_____

D.C. Docket No. 9:17-cv-80476-DMM


ROYAL PALM PROPERTIES, LLC,
a Florida limited liability company,

Plaintiff - Counter Defendant - Appellant,

versus

PINK PALM PROPERTIES, LLC,
a Florida limited liability company,

Defendant - Counter Claimant - Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida
_____

(February 18, 2020)

Before JORDAN and NEWSOM, Circuit Judges, and WRIGHT,[*] District Judge.

NEWSOM, Circuit Judge:

Royal Palm Yacht & Country Club, a residential community in Boca Raton, Florida, is home to multimillion-dollar mansions, a championship golf course, and even a private marina.  It's also home, as it turns out, to the contentious real-estate rivalry that spawned this trademark litigation.

Royal Palm Properties, a real-estate broker whose specialty is buying and selling homes in Royal Palm Yacht & Country Club, sued its competitor, Pink Palm Properties, for infringing its registered service mark on the phrase "Royal Palm Properties."  Pink Palm Properties counterclaimed, challenging the mark's validity.  A jury in the U.S. District Court for the Southern District of Florida upheld Royal Palm Properties' mark but found that Pink Palm Properties hadn't infringed it.  The district court, though, overturned the verdict in part, granting Pink Palm Properties' renewed motion for judgment as a matter of law and ordering the cancellation of Royal Palm Properties' mark.  The question before us is whether the district court correctly flipped the jury's verdict and granted judgment as a matter of law on Pink Palm Properties' trademark-invalidation counterclaim.

---

[*] Honorable Susan Webber Wright, United States District Judge for the Eastern District of Arkansas, sitting by designation.

We hold that the district court erred.  To be entitled to judgment as a matter of law, Pink Palm Properties would have had to make quite the showing at trial—such that no reasonable jury could have found that it failed to prove grounds for cancelling Royal Palm Properties' mark.  Based on our careful review of the record, we conclude that Pink Palm Properties didn't meet this high bar.  On neither of its two grounds for cancellation—that the "Royal Palm Properties" mark (1) is not "distinctive" and (2) is "confusingly similar" to previously registered marks—did Pink Palm Properties prove, decisively, that it had won the day.  We therefore reverse the district court's decision to overturn the jury's verdict and invalidate Royal Palm Properties' service mark.

## I

### A

Royal Palm Yacht & Country Club is a high-end residential community in Boca Raton, Florida.  The posh, waterfront neighborhood consists of both a 700-home subdivision and a private country club.  Unsurprisingly, property in Royal Palm Yacht & Country Club doesn't come cheap.  If you're looking to buy a house there, it'll run you somewhere between $1.1 million and $15 million.

The plaintiff-appellant in this case, Royal Palm Properties, is a real-estate agency that focuses exclusively on the Royal Palm Yacht & Country Club community—a strategy that has proved remarkably successful.  Royal Palm

3

Properties consistently represents more buyers and sellers in the subdivision than any other broker. To protect its position in the Royal Palm Yacht & Country Club market, Royal Palm Properties has developed an aggressive marketing campaign. During the past 10 years, Royal Palm Properties has spent $1.6 million promoting its services to Boca Raton residents through the periodic transmission of mailers, reports, calendars, magazines, and brochures—all of which are aimed at promoting the "Royal Palm Properties" brand. The agency also hosts an annual "Showcase of Homes" in Royal Palm Yacht & Country Club, which features simultaneous open houses in the subdivision and a brunch at the country club.

Royal Palm Properties has also used trademark law to protect its brand. In 2012, the agency acquired a federally registered service mark on the name "Royal Palm Properties." The agency applied for and obtained the mark from the U.S. Patent and Trademark Office under Section 2(f) of the Lanham Act, which provides federal protection for any mark that has "acquired distinctiveness" over time, even though it might not be "inherently distinctive." *See* 15 U.S.C. § 1052(f). (If that all sounds like so much gobbledygook to you, don't worry; a deep dive into trademark law is coming. For now, just know that the "inherent"-"acquired" distinction matters.)

Several years later, in 2015, Royal Palm Properties went back to the PTO seeking registration of a "composite mark"—a combination of the phrase "Royal

4

Palm Properties" and an "RP" logo.  The PTO, though, denied Royal Palm Properties' second application after determining that the proposed composite mark was "confusingly similar" to two existing service marks, "Royale Palms" and "Royale Palms at Kingston Shores," which had been registered in 2007 and 2008, respectively, to a real-estate company in Texas.  The PTO's 2015 decision made no mention of Royal Palm Properties' 2012 registration of the "Royal Palm Properties" mark, apparently leaving it intact.

Enter Pink Palm Properties, our defendant-appellant.  Like Royal Palm Properties, Pink Palm Properties is a luxury real-estate brokerage agency in Boca Raton.  But unlike Royal Palm Properties, Pink Palm Properties operates in a variety of residential communities—only a fraction of its business involves the homes in Royal Palm Yacht & Country Club.  That, though, hasn't stopped Royal Palm Properties from keeping a close eye on Pink Palm Properties.  In 2017, Royal Palm Properties noticed that Pink Palm Properties was using a link on its website labeled "Royal Palm Properties" to direct viewers to Pink Palm Properties' listings in Royal Palm Yacht & Country Club.  Trademark law in hand, Royal Palm Properties demanded that Pink Palm Properties stop using the "Royal Palm Properties" name on its website.  Pink Palm Properties eventually complied, but— so Royal Palm Properties claimed—the damage was done.

5

**B**

Royal Palm Properties filed suit against Pink Palm Properties in the U.S. District Court for the Southern District of Florida, alleging that Pink Palm Properties had infringed its registered service mark, "Royal Palm Properties," in violation of the Lanham Act, 15 U.S.C. § 1114. Pink Palm Properties both denied the infringement allegation and filed a counterclaim seeking a declaration that the "Royal Palm Properties" mark is invalid under the Act. After a three-day trial, the jury split the baby: It upheld the mark but found that Pink Palm Properties hadn't infringed it.

Following the jury's verdict, Pink Palm Properties filed a renewed motion for judgment as a matter of law on its counterclaim. The district court granted the motion and (overturning the jury verdict) invalidated the "Royal Palm Properties" service mark. Lanham Act protection is available, the district court noted, only to "distinctive" marks. And, the court held, the phrase "Royal Palm Properties" has neither "inherent" nor "acquired" distinctiveness. "Royal Palm Properties" is not inherently distinctive, the district court concluded, for two reasons: (1) it is "primarily geographically descriptive," and thus insufficiently unique to qualify for trademark protection; and (2) it is "confusingly similar" to previously registered marks. (The district court made a mistake in treating the "confusingly similar" issue as part-and-parcel of the "distinctiveness" question—as we'll explain later, it

is its own thing—but for present purposes it's not important.)  On acquired

distinctiveness, the district court held that there was insufficient evidence to find

that the phrase has obtained the requisite "secondary meaning," such that the

public now associates it with Royal Palm Properties—the real-estate agency—

rather than Royal Palm Yacht & Country Club—the subdivision.  Accordingly, the

district court held that the "Royal Palm Properties" mark "should never have been

registered" and "ought to be cancelled pursuant to 15 U.S.C. § 1119."

This is Royal Palm Properties' appeal.

## II

The Lanham Act gives federal courts the authority to cancel trademarks that

the PTO has registered.  15 U.S.C. § 1119.  In order to successfully prosecute a

claim for trademark cancellation, the challenger of a federally registered mark

must demonstrate "(1) [t]hat it has standing to petition for cancellation because it is

likely to be damaged, and (2) that there are valid grounds for discontinuing

registration."  *Coach House Rest., Inc. v. Coach and Six Rests., Inc.*, 934 F.2d

1551, 1557 (11th Cir. 1991).  Where, as here, the mark at issue has been registered

for less than five years when challenged, the "valid grounds for discontinuing

registration" include any reason for which "the registration should have been

barred in the first instance."  *Id.* at 1558; *see also Person's Co., Ltd. v. Christman*,

900 F.2d 1565, 1568 (Fed. Cir. 1990).

7

Pink Palm Properties sought—and on appeal now defends—cancellation of the "Royal Palm Properties" service mark on two grounds.  First, it says, the mark is not "distinctive"—it has neither "inherent" nor "acquired" distinctiveness.  Second, it contends that the mark is "confusingly similar" to previously registered marks.  We'll consider each ground in turn.

Before jumping into the merits, though, we need to set the stage with a brief word about procedural posture.  This appeal comes to us from the district court's order granting Pink Palm Properties' motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(b).  We review the district court's decision *de novo*, applying the same standard that court applied.  *Richardson v. Leeds Police Dep't*, 71 F.3d 801, 805 (11th Cir. 1995).  Accordingly, we examine the entire record in the light most favorable to Royal Palm Properties, as the party that prevailed at trial, and ask whether the evidence nonetheless points "so overwhelmingly in favor of" Pink Palm Properties that the jury's verdict cannot stand.  *Id.* (quotation omitted).  This appeal, in other words, tasks us with determining whether a reasonable jury could have decided that Pink Palm Properties was *not* entitled to cancellation of the "Royal Palm Properties" trademark; if a reasonable jury could have so concluded—could have upheld the mark, as the jury here did—then the district court's order overturning the verdict

8

and granting judgment as a matter of law must be reversed.  *See Bogle v. Orange Cty. Bd. of Cty. Comm'rs*, 162 F.3d 653, 656 (11th Cir. 1998).

## A

Pink Palm Properties first challenges the "Royal Palm Properties" mark on the ground that it is not "distinctive."  Under the Lanham Act, federal trademark protection is available only to "distinctive" marks—"marks that serve the purpose of identifying the *source* of . . . goods or services."  *Welding Servs., Inc. v. Forman*, 509 F.3d 1351, 1357 (11th Cir. 2007) (emphasis added) (citations omitted).  As this Court has explained before—and as we have suggested here already—a mark can be "distinctive" in one of two ways: It can be "inherently" distinctive, or it can "acquire" distinctiveness over time.  *See id.*  Inherently distinctive marks themselves identify the source of a particular product or service: "Coca-Cola," for example, describes only one brand of soft drink—one producer. *Cf. Knights Armament Co. v. Optical Sys. Tech., Inc.*, 654 F.3d 1179, 1188 (11th Cir. 2011).[1]  A mark that has acquired distinctiveness, by contrast, might initially have been understood to describe a broad class of potential products or services, but over time it has taken on a "secondary meaning" that links it to a particular source: "California Pizza Kitchen," for example, may facially describe any random

---

[1] A word of caution: We use a variety of well-known brands to demonstrate and clarify pertinent (and at times esoteric) concepts in trademark law.  We do not mean thereby to suggest any determination about the legal status of those marks.

9

pizza eatery in the Golden State, but the public has come to associate it with one brand in particular. *Cf. Coach House*, 934 F.2d at 1560.

To separate the "distinct" from the non-"distinct"—and to differentiate among the distinct, for that matter—we have classified marks into four categories, in descending order of strength: (1) "fanciful" or "arbitrary," (2) "suggestive," (3) "descriptive," and (4) "generic." *Id.* at 1559. We consider fanciful marks (think "Verizon" telecommunications—the name is a made-up word), arbitrary marks (think "Apple" computers—the name is a real word that has nothing to do with the product) and suggestive marks (think "Igloo" coolers—the name is a real word that bears only an oblique relationship to the product) to be "inherently" distinctive. *Cf. Knights Armament Co.*, 654 F.3d at 1188. For marks in these categories, no proof of secondary meaning is necessary. *Id.* By contrast, we consider descriptive marks (for example, an eyeglasses store called "Vision Center") and generic marks (a book-selling company called "Books") *not* to be inherently distinctive. *Id.* Descriptive marks can become protectible only if they "acquire" distinctiveness by obtaining a "secondary meaning," and generic marks can never become protectible. *Id.*

## 1

Pink Palm Properties contends that "Royal Palm Properties" is not distinctive because it falls into the descriptive-mark category (and thus is not

inherently distinctive) and has not taken on a secondary meaning (and thus has not acquired distinctiveness).  Before we can evaluate the merits of these arguments, though, we need to explain who had the burden of proving them at trial—or disproving them, as the case may be.

We have held that where, as in this case, a mark has been registered with the PTO, there is a "rebuttable presumption that the mark[] [is] protectable or 'distinctive.'"  *Welding Servs. Inc.*, 509 F.3d at 1357 n.3; *see also* 15 U.S.C. § 1115(a).  Accordingly, in order to successfully challenge a registered mark on distinctiveness grounds, the challenger must overcome the presumption of validity by showing—by a preponderance of the evidence—that the mark is *not* distinctive. *See Cerveceria Centroamericana, S.A. v. Cerveceria India, Inc.*, 892 F.2d 1021, 1023 (Fed. Cir. 1989) (discussing the standard in the context of cancellation for abandonment); *Borinquen Biscuit Corp. v. M.V. Trading Corp.*, 443 F.3d 112, 117–18 (1st Cir. 2006) (stating that a putative infringer challenging a registered mark on distinctiveness grounds must prove descriptiveness by a preponderance of the evidence).

We have also suggested, however, echoing the majority of circuits to consider the issue, that trademark holders are never entitled to presumptions of

11

*both* "inherent" *and* "acquired" distinctiveness—they get only one or the other.[2] *Welding Servs. Inc.*, 509 F.3d at 1357 n.3.  And "[t]he sort of presumption [that is] appropriate depends," we have explained, "on whether or not the [PTO] has required proof of secondary meaning."  *Id.*  "If no proof of secondary meaning [was] provided" as part of the registration process, the "presumption is that [the] mark is inherently distinctive," whereas "if proof of secondary meaning [*was*] provided, [the] presumption is that [the] mark has [acquired distinctiveness by obtaining] secondary meaning."  *Id.* (citation omitted).

Recall that, here, Royal Palm Properties applied for—and the PTO granted—the "Royal Palm Properties" service mark under Section 2(f) of the Lanham Act, which covers *acquired* distinctiveness.  *See* 15 U.S.C. § 1052(f). Royal Palm Properties is therefore entitled to the presumption that its mark has acquired distinctiveness.  But that's it.  If Pink Palm Properties successfully rebuts the presumption of acquired distinctiveness, the burden would shift to Royal Palm Properties to prove inherent distinctiveness.

---

[2] *See, e.g.*, *Uncommon, LLC v. Spigen, Inc.*, 926 F.3d 409, 424 (7th Cir. 2019) ("The Lanham Act extends 'one of two' presumptions—either that the mark is inherently distinctive *or* that it has acquired distinctiveness.  Registration owners do not get both.") (citations omitted); *Aromatique, Inc. v. Gold Seal, Inc.*, 28 F.3d 863, 870 (8th Cir. 1994) ("[T]he relevant presumption to which [a trademark holder] is entitled, as the owner of marks registered under Section 2(f), is not the presumption that the marks are inherently distinctive, but rather that the marks had acquired distinctiveness.").  *But see U.S. Search, LLC v. U.S. Search.com Inc.*, 300 F.3d 517, 524 (4th Cir. 2002) (holding that when the PTO issues a certificate of registration without requiring a showing of secondary meaning, it provides prima facie evidence that the mark is suggestive or, if descriptive, has acquired secondary meaning).

**2**

Our first—and as it turns out, only—distinctiveness question, then, is whether Pink Palm Properties successfully rebutted the presumed "secondary meaning" of the "Royal Palm Properties" service mark, such that it was entitled to judgment as a matter of law.  We hold that it did not.

A mark obtains a secondary meaning—and therefore acquires distinctiveness—when, in the minds of the relevant consuming public,[3] the "primary significance of the term . . . is not the product but the producer." *Am. Television & Commc'ns Corp. v. Am. Commc'ns & Television, Inc.*, 810 F.2d 1546, 1549 (11th Cir. 1987) (quotation omitted).  So, in this case, Pink Palm Properties had the burden to prove the opposite—that when the relevant consumers hear "Royal Palm Properties," they think of the "product"—*i.e.*, the homes within Royal Palm Yacht & Country Club—rather than the "producer"—*i.e.*, the specific brokerage services that Royal Palm Properties provides.

---

[3] When a product is "targeted at only a specific segment of the general public," the relevant consuming public consists only of those targeted consumers—not the public at large.  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:46 (5th ed. 2019); *see also Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 226 (2d Cir. 2012) (considering whether secondary meaning had been achieved "in the specific context of the fashion industry").  Here, the parties disagree over who, exactly, constitutes the relevant consuming public.  Considering the evidence in the light most favorable to Royal Palm Properties—which, given the procedural posture, we must—we hold that the relevant consuming public consists of people who are interested in buying or selling a home in Royal Palm Yacht & Country Club.

Secondary meaning can be proven, we have held, through either direct evidence (like consumer surveys) or circumstantial evidence. *Tartell v. S. Fla. Sinus and Allergy Ctr.*, 790 F.3d 1253, 1257 (11th Cir. 2015). When evaluating secondary meaning based on circumstantial evidence, we consider four factors:

> (1) the length and manner of [the mark's] use; (2) the nature and extent of advertising and promotion; (3) the efforts made by the [proprietor] to promote a conscious connection in the public's mind between the [mark] and the [proprietor's] product or business; and (4) the extent to which the public actually identifies the [mark] with the [proprietor's] product or venture.

*Conagra, Inc. v. Singleton*, 743 F.2d 1508, 1513 (11th Cir. 1984); *see also Tartell*, 790 F.3d at 1257–58.

Pink Palm Properties has made two main secondary-meaning arguments. In its brief, Pink Palm Properties contended that Royal Palm Properties had the burden of proof on the secondary-meaning question and that Royal Palm Properties' evidence regarding the public's actual identification of the "Royal Palm Properties" mark with Royal Palm Properties' business—*i.e.*, pertaining to the fourth *Conagra* factor—was "sorely lacking." Therefore, Pink Palm Properties argued, Royal Palm Properties failed to carry its burden on secondary meaning.

Things changed at oral argument. There, Pink Palm Properties acknowledged (as we have held) that it had the burden to rebut the presumed secondary meaning of the "Royal Palm Properties" mark. Oral Argument at 15:35–15:55. It asserted, though, that it met its burden because there was

14

"overwhelming[]" record evidence regarding the manner of the mark's use for purposes of the first *Conagra* factor—namely, that Royal Palm Properties' use of the mark was not substantially "exclusive." *Id.* at 17:00–17:18. Pink Palm Properties noted that, at trial, it had produced printouts of the websites for various third-party real-estate businesses named "Royal Palm Properties" throughout the United States. *Id.* at 17:17–18:18. This evidence, according to Pink Palm Properties, conclusively proved that Royal Palm Properties' use of the "Royal Palm Properties" mark was not sufficiently exclusive to warrant a finding of secondary meaning.

Neither of Pink Palm Properties' arguments carries the day. As we've explained, our caselaw squarely rejects its first argument: In an action challenging a trademark registered by the PTO, the trademark holder enjoys a presumption of distinctiveness in accordance with the mark's registration. *See supra* at 11–12. Here, because Royal Palm Properties sought and obtained registration of its "Royal Palm Properties" mark under Section 2(f) of the Lanham Act, Royal Palm Properties is entitled to a presumption that its mark has acquired distinctiveness. It had no burden to come forward with any affirmative evidence to that effect; to the contrary, Pink Palm Properties had the burden to prove otherwise.

Pink Palm Properties' second argument also comes up short. While evidence of substantial third-party use of a mark tends to weaken the argument that

15

the mark has obtained secondary meaning, the simple fact that *some* third-party use exists isn't fatal, even as to the first *Conagra* factor: "[T]he issue is not whether [the proponent's] use [of the mark] was exclusive" in the way that Pink Palm Properties seems to assume, but rather "whether [the proponent's] use of the mark [was such that it] had achieved secondary meaning, as opposed to anyone else's use of a similar mark."  J. Thomas McCarthy, McCarthy on Trademarks and Unfair Competition § 15:27 (5th ed. 2019).  Pink Palm Properties cannot, in other words, rely solely on the fact that it has shown that third-party use of "Royal Palm Properties" exists.  *See Echo Travel, Inc. v. Travel Assocs., Inc.*, 870 F.2d 1264, 1269 (7th Cir. 1989) (stating that, although third-party use can be weighed, "evidence of third party use is not conclusive").  It must also have shown that third parties have used the mark "to promote the same goods or services to the same consumer class."  *Id.*

But Pink Palm Properties presented precious little evidence to prove that third parties are using, or have used, the "Royal Palm Properties" mark to promote the "same goods" to the "same consumer class" as Royal Palm Properties does. After all, Royal Palm Properties provides a niche service (real estate brokerage exclusively in Royal Palm Yacht & Country Club) to a small class of consumers (those looking to buy or sell property in Royal Palm Yacht & Country Club). Based on the evidence that Pink Palm Properties proffered, we simply cannot say

16

whether any of the third-party users of the phrase "Royal Palm Properties" have ever competed with Royal Palm Properties in this highly specialized market. In fact, Pink Palm Properties' evidence showed only these third-party entities' names and, in some (but not all) instances, their locations and their general industries. We don't know the specific services they offer, the markets they target, or the clients they serve. In some cases, we don't even know whether they're still operating.[4] Given all these unknowns, we think that Pink Palm Properties' third-party-use evidence is, at best, weak proof of the first *Conagra* factor.

The only other secondary-meaning evidence came from Royal Palm Properties. Despite not having the burden on the acquired-distinctiveness issue, Royal Palm Properties presented evidence pertaining to both the second and third *Conagra* factors—the "nature and extent of advertising and promotion of the mark" and the "efforts made by the [proprietor] to promote a conscious connection between the mark and the business." In particular, Royal Palm Properties touted its $1.6 million marketing campaign—a steady stream of mailers, brochures, magazines, and events—which, it explained, it has used to "ensure[] that it remains

---

[4] When, for instance, the Court asked counsel for Pink Palm Properties whether his research indicated that the third-party "Royal Palm" entities were "actually operating," counsel replied that the database he relied on "identifie[d] that [those entities] have been filing their annual reports" but conceded that "[t]hat's as far as we went." Oral Argument at 18:19–18:37.

17

the known, prominent broker for the parcels" in Royal Palm Yacht & Country Club.

Given the procedural posture of this case—an appeal of an order granting judgment as a matter of law—in order for Pink Palm Properties to succeed on its "acquired distinctiveness" claim, it had to convince us not only that it met its burden to prove that "Royal Palm Properties" has not acquired a secondary meaning, but also (and further) that no reasonable jury could find that it *failed* to meet its burden.  Put simply, we are not convinced.  Pink Palm Properties provided no direct evidence regarding the meaning of "Royal Palm Properties" to the relevant consuming public, and its circumstantial evidence—which pertained only to one of the four *Conagra* factors—was not compelling.

\* \* \*

We hold, therefore, that Pink Palm Properties' argument that the "Royal Palm Properties" service mark lacked distinctiveness does not entitle it to judgment as a matter of law on its claim that the mark is invalid.

**B**

But there's more.  Pink Palm Properties also challenges the validity of the "Royal Palm Properties" mark on the ground that it is "confusingly similar" to

18

previously registered marks.[5]  Under the Lanham Act, a trademark application should be denied when the mark "so resembles a mark registered in the [PTO] . . . as to be likely, when used on or in connection with the goods of the applicant, to cause confusion, or to cause mistake, or to deceive."  15 U.S.C. § 1052(d).  Pink Palm Properties contends that the phrase "Royal Palm Properties" is "confusingly similar" to two previously granted trademarks—"Royale Palms" and "Royale Palms at Kingston Shores"—and should therefore be invalidated. Royal Palm Properties offers two responses.  First, it argues that Pink Palm Properties lacks standing to challenge its mark based on marks owned by a third party.  Second, it contends that, even if Pink Palm Properties has standing, the jury was entitled to find that its "Royal Palm Properties" mark was not "confusingly similar" to the "Royale Palms" marks.

---

[5] The district court appears to have assessed the "confusingly similar" question as a sub-part of "distinctiveness."  It held that the "Royal Palm Properties" mark was confusingly similar to previously registered marks, but that it could be saved by a finding of "secondary meaning"— which, as we've explained, is a distinctiveness issue.  Dist. Ct. Order at 10.  This, we think, was error.  The confusingly-similar question is a stand-alone basis for invalidation under the Lanham Act; a confusingly-similar mark cannot be rescued by a finding of secondary meaning.  *See, e.g.*, *Yamaha Int'l Corp. v. Hoshino Gakki Co.*, 840 F.2d 1572, 1580 (Fed. Cir. 1988) ("Section 2(f) serves as an exception to a rejection under the provisions of *one of the other sections, Section 2(e)*." (emphasis added)); *see also* Trademark Manual of Examining Procedure § 1212.02(a) (22d ed. 2018) ("[I]t is inappropriate to assert acquired distinctiveness to contravene a refusal under [15 U.S.C. § 1052(d), which addresses confusingly-similar marks].").

**1**

First, standing.  A litigant challenging a trademark's validity under the

Lanham Act must have standing to petition for cancellation.  *Coach House*, 934

F.2d at 1557.[6]  Royal Palm Properties claims that Pink Palm Properties lacks

standing to challenge its "Royal Palm Properties" mark based on the "Royale

Palms" marks because Pink Palm Properties doesn't own them.  In support of this

argument, Royal Palm Properties points to our decision in *Coach House*, which, in

the course setting out the requirements for a "confusingly similar" challenge, states

as follows:

> In order to cancel a registration under Lanham Act Section 2(d) in this case, petitioner must prove: (1) that the registered mark resembles petitioner's mark, (2) that petitioner acquired trade identity rights in the mark before the registrant used the mark, and (3) that the registered mark is likely to cause confusion when used in connection with the services of [the] registrant.

934 F.2d at 1559 (footnotes omitted).  Emphasizing our reference to "petitioner's"

mark, Royal Palm Properties asserts that *Coach House* requires that anyone

---

[6] To clarify, despite a few brief mentions of *constitutional* standing during oral argument, *see* Oral Argument at 11:00–11:15, 34:02–34:30, we understand Royal Palm Properties to be attacking Pink Palm Properties' *statutory* standing under the Lanham Act.  To the extent that Royal Palm Properties can be understood to assert that Pink Palm Properties lacks Article III standing, we disagree.  Pink Palm Properties has suffered an "injury in fact" (as long as the "Royal Palm Properties" mark is valid, Pink Palm Properties cannot use it—and was, in fact, sued for allegedly doing so); that injury is "fairly traceable" to the actions of Royal Palm Properties (which owns the rights to the mark and sued Pink Palm Properties for allegedly infringing it); and that injury would "likely" be "redressed by a favorable decision" (if we were to invalidate the "Royal Palm Properties" mark, Pink Palm Properties would be free to use it). *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992).

20

challenging a trademark on confusingly-similar grounds have "trade identity rights" in the allegedly similar, previously granted marks. And, the argument goes, because Pink Palm Properties has no rights in the "Royale Palms" marks, it has no standing to allege that the "Royal Palm Properties" mark should be cancelled because it is "confusingly similar" to them.[7]

We disagree. The Lanham Act broadly provides that a trademark-cancellation proceeding may be initiated by "any person who *believes that he is or will be damaged* . . . by the registration of a mark." 15 U.S.C. § 1064 (emphasis added). The purpose of this requirement is merely to ensure that the challenger has a "direct and personal stake in the outcome" and is not a "mere intermeddler[]." *Ritchie v. Simpson*, 170 F.3d 1092, 1095 (Fed. Cir. 1999) (quotation omitted). As a general matter, then, the Lanham Act sets a low statutory-standing bar: "The requirement for standing [to pursue a trademark-cancellation claim] is fairly easy to satisfy in the vast majority of cases." McCarthy, *supra*, § 20:46.

---

[7] In addition to citing *Coach House*, Royal Palm Properties also alleges that Pink Palm Properties' confusingly-similar claim raises an improper *jus tertii* defense. But *jus tertii*—"[a] trademark-infringement defense based on the claim that a third party has trademark rights superior to those of the plaintiff," Black's Law Dictionary 995 (10th ed. 2014)—is inapplicable here. A defendant pressing a *jus tertii* defense "in effect argues that, 'Somebody has a right to sue me, but it's not you.'" McCarthy, *supra*, § 31:157. Here, however, Pink Palm Properties does not allege that the "Royale Palms" marks owner has any rights in the "Royal Palm Properties" mark. Pink Palm Properties simply argues—given the "Royale Palms" marks' existence—that the "Royal Palm Properties" mark shouldn't have been granted in the first place.

21

We think it's clear that Pink Palm Properties has the requisite direct, personal interest in the outcome of this litigation. Were the "Royal Palm Properties" trademark cancelled, Pink Palm Properties would be free to use the mark in its promotional materials, without fear of another lawsuit. *See Herbko Int'l, Inc. v. Kappa Books, Inc.*, 308 F.3d 1156, 1161 (Fed Cir. 2002) ("In most settings, a direct commercial interest satisfies the 'real interest' test."). And that, so far as Lanham Act standing is concerned, is enough: once there's "no question that [the challenger] . . . ha[s] a real interest in the outcome of the proceedings," he may pursue cancellation "on any of the grounds set forth in section 2 of the Lanham Act which negate [the trademark holder's] right to its subject registration." *Jewelers Vigilance Comm., Inc. v. Ullenberg Corp.*, 823 F.2d 490, 493 (Fed. Cir. 1987).

What, though, about *Coach House*? We think that Royal Palm Properties simply reads too much into the language there. In that case, it was clear from the beginning—it just so happened—that the trademark challenger sought cancellation based on a mark that it owned. *Coach House*, 934 F.2d at 1556. So it's not surprising that when it came time to set out what the petitioner "in th[at] case" had to prove, we referred to the "petitioner's" mark and the "petitioner['s]" rights in it. *Id.* at 1559. That reference, we think, is best understood as describing a case-specific merits standard—what the challenger there had to do to prevail—not as

22

implicitly laying down a categorical standing rule.  The relevant language from *Coach House*, in other words, does not require that *every* confusingly-similar challenge be brought by someone with rights in the allegedly similar mark; it simply reflects the reality that, in that case, the challenger *did* have rights in the allegedly similar mark.

*  *  *

We hold, therefore, that Pink Palm Properties has standing to challenge the "Royal Palm Properties" mark on "confusingly similar" grounds, even though it doesn't own the allegedly similar, previously registered "Royale Palms" marks.

**2**

So, on to the merits of the confusingly-similar issue.  In order to successfully challenge the "Royal Palm Properties" mark on confusingly-similar grounds, Pink Palm Properties must prove (1) that the "Royal Palm Properties" mark "resembles" the "Royale Palms" marks, (2) that the "Royale Palms" marks were registered before the "Royal Palm Properties" mark, and (3) that the "Royal Palm Properties" mark is likely to cause confusion when used in connection with Royal Palm Properties' services.  *See Coach House*, 934 F.2d at 1559.

Pink Palm Properties certainly satisfied the first two *Coach House* requirements.  The "Royal Palm Properties" mark clearly "resembles" the "Royale

23

Palms" marks—the spelling of the dominant words is nearly identical[8]—and the "Royale Palms" marks were registered several years before the "Royal Palm Properties" mark.

The third requirement, however—that the challenged mark is likely to cause confusion—deserves a closer look. We have said that when examining the likelihood of confusion between two marks, a reviewing court should consider the following eight (!) factors: "(1) [t]he distinctiveness of the mark at issue, (2) the similarity of the design, (3) the similarity of the service, (4) the similarity of service outlets, (5) the similarity of customers, (6) the similarity of advertising media utilized, (7) the defendant's intent, and (8) any actual confusion." *Id.* at 1561 (citing *Wesco Mfg., Inc. v. Tropical Attractions of Palm Beach, Inc.*, 833 F.2d 1484, 1489 (11th Cir. 1987)).

A point-by-point breakdown isn't necessary. Suffice it to say that Pink Palm Properties didn't conclusively prove that there is a likelihood of confusion between the "Royal Palm Properties" mark and the "Royale Palms" marks. For far too many of the eight factors, Pink Palm Properties failed to produce any evidence at all.[9] In fact, based on our review of the record, here's the totality of what we

---

[8] Welcome to the author's life. *Compare* "Newsom" *with* "Newsome."

[9] Pink Palm Properties' confusingly-similar argument relies principally on the PTO's 2015 denial of Royal Palm Properties' application for a "composite mark." Because the PTO rejected Royal Palm Properties' 2015 application on the ground that the term "Royal Palm Properties" is

24

know: a company in Texas registered the "Royale Palms" marks for use in connection with the real-estate industry.  That's it.  We know nothing about how the marks have been used or the customers they've been used to target.  Nor, importantly, do we have any evidence that there has been actual confusion between these marks and the "Royal Palm Properties" mark.  *See Frehling Enterprises, Inc. v. Int'l Select Group., Inc.*, 192 F.3d 1330, 1340 (11th Cir. 1999) ("It is undisputed that evidence of actual confusion is the best evidence of a likelihood of confusion.").  The evidence presented by Pink Palm Properties falls far short of proving—let alone conclusively proving, as it must given the procedural posture— that the use of the "Royal Palm Properties" mark is likely to cause confusion with the "Royale Palms" marks.

---

confusingly similar to the term "Royale Palms," Pink Palm Properties argues that we should now cancel the 2012 service mark—which uses the same phrase—for the same reason.  But this argument isn't the clincher that Pink Palm Properties seems to think it is.  True, federal courts have consistently held that, when considering whether one mark is likely to be confused with another, we should pay the PTO's confusingly-similar determination some attention—ranging from "great weight," *Syntex Labs., Inc. v. Norwich Pharmacal Co.*, 437 F.2d 566, 569 (2d Cir. 1971), to "respectful consideration," *Carling Brewing Co. v. Philip Morris Inc.*, 297 F. Supp. 1330, 1337 (N.D. Ga. 1968), to "not . . . much weight," *Progressive Distrib. Servs. Inc. v. United Parcel Serv., Inc.*, 856 F.3d 416, 427 (6th Cir. 2017) (describing and endorsing the Ninth Circuit's approach in *Carter-Wallace, Inc. v. Procter & Gamble Co.*, 434 F.2d 794, 802 (9th Cir. 1970)).  The federal courts have been unanimous, however, in holding that we are not *bound* by the PTO's confusingly-similar analysis.  *See, e.g.*, *A & H Sportswear v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 220–21 (3d Cir. 2000).  And our obligation to defer to the PTO is especially weak here, where the PTO failed to weigh many of the considerations that this Court has deemed relevant to deciding the "likelihood of confusion" question (*e.g.*, *Coach House* factors 4–8).  So although the PTO's 2015 rejection is perhaps *some* evidence that "Royal Palm Properties" is confusingly similar to the "Royale Palms" marks, it certainly isn't conclusive.

25

\* \* \*

We hold, therefore, that Pink Palm Properties' argument that the "Royal Palm Properties" mark is confusingly similar to the "Royale Palms" marks does not entitle it to judgment as a matter of law on its claim that the "Royal Palm Properties" mark is invalid.

## III

Accordingly, we **REVERSE** the district court's grant of Pink Palm Properties' renewed motion for judgment as a matter of law.