[DO NOT PUBLISH]

In the

# United States Court of Appeals

## For the Eleventh Circuit

_____

No. 24-10564

Non-Argument Calendar

_____

HI-TECH PHARMACEUTICALS, INC.,

Plaintiff-Counter Defendant-Appellant,

*versus*

NUTRITION RESOURCE SERVICES, INC.,
d.b.a. JBN - Just Be Natural,

Defendant-Counter Claimant-Appellee.

_____

Appeal from the United States District Court
for the Northern District of Georgia
D.C. Docket No. 1:23-cv-05536-TCB

_____

Before JORDAN, LAGOA, and BLACK, Circuit Judges.

PER CURIAM:

Hi-Tech Pharmaceuticals, Inc. (Hi-Tech), appeals the district court's grant of a motion for preliminary injunction filed by Nutrition Resource Services, Inc., d.b.a. JBN (JBN).  Hi-Tech asserts the district court erred in granting the preliminary injunction because JBN did not satisfy the factors necessary for the entry of a preliminary injunction, and the district court erred in setting a *de minimis* security bond for the preliminary injunction.

After review, we conclude the district court did not abuse its discretion in granting the preliminary injunction as it did not err in its legal conclusions nor clearly err in its factual determinations. *See Lebron v. Sec'y, Fla. Dep't of Children & Fams.*, 710 F.3d 1202, 1206 (11th Cir. 2013) ("Although we review the district court's grant of a preliminary injunction for an abuse of discretion, underlying questions of law are reviewed *de novo*, and the district court's factual determinations cannot be disturbed unless clearly erroneous.").  After setting out the background, we focus our discussion on the specific arguments made by Hi-Tech in support of its appeal.

## I.  BACKGROUND

JBN is a family owned and operated business that sells nutritional products and supplements.  JBN's GET KRANK'D mark has been registered with the United States Patent and Trademark Office (USPTO) since 2006, and JBN's KRANK'D mark has been registered since 2017.  The KRANK'D marks are used in the sale of

energy drinks, and in the sale of syrups and powders used in preparation of energy drinks.

Hi-Tech also manufactures, markets, and sells dietary and nutritional supplements. Hi-Tech applied to register KRANK3D with the USPTO in January 2023. The USPTO approved the mark for publication, and the mark was published for opposition on September 26, 2023.

JBN's counsel sent Hi-Tech a cease-and-desist letter on August 8, 2023, alleging ownership of the registered trademark KRANK'D, and stating that JBN recently discovered Hi-Tech was using the confusingly similar mark, KRANK3D. Hi-Tech responded through counsel on August 29, 2023, denying its mark infringed on JBN's mark and refusing to stop use of the KRANK3D mark. When the KRANK3D mark was published for opposition, JBN filed a notice of opposition with the Trademark Trial and Appeal Board (TTAB) alleging the mark is likely to cause confusion, mistake, or deception as to the source of Hi-Tech's products in violation of the Lanham Act, 15 U.S.C. § 1052(d). JBN's opposition proceeding is stayed because of Hi-Tech's initiation of federal litigation.

Hi-Tech filed an action for declaratory judgment against JBN on December 4, 2023, seeking declaratory judgment of (1) non-infringement of its KRANK3D trademark, and (2) abandonment of its KRANK'D trademark. JBN answered and brought several counterclaims under the Lanham Act and Georgia law. On February 2, 2024, JBN filed a motion seeking a preliminary

4                          Opinion of the Court                     24-10564

injunction enjoining Hi-Tech from using the allegedly infringing mark, KRANK3D.  The district court granted JBN's motion for a preliminary injunction.

## II.  DISCUSSION

*A.  Preliminary Injunction*

A district court may grant a preliminary injunction if the movant shows:

> (1) a substantial likelihood of success on the merits of the underlying case, (2) the movant will suffer irreparable harm in the absence of an injunction, (3) the harm suffered by the movant in the absence of an injunction would exceed the harm suffered by the opposing party if the injunction issued, and (4) an injunction would not disserve the public interest.

*Osmose, Inc. v. Viance, LLC*, 612 F.3d 1298, 1307 (11th Cir. 2010) (quotation marks omitted).

*1.  Likelihood of Success*

Hi-Tech contends the district court erred in finding JBN was likely to succeed in its underlying lawsuit alleging trademark infringement.  15 U.S.C. § 1114(1)(a) provides:

> [a]ny person who shall, without the consent of the registrant . . . use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely

24-10564                Opinion of the Court                    5

> to cause confusion, or to cause mistake, or to deceive
> . . . shall be liable in a civil action by the registrant.

To prevail on a trademark infringement claim, JBN must show (1) "it had prior rights to the mark at issue"; and (2) Hi-Tech "had adopted a mark or name that was the same, or confusingly similar to its mark, such that consumers were likely to confuse the two." *Planetary Motion, Inc. v. Techsplosion, Inc.*, 261 F.3d 1188, 1193 (11th Cir. 2001).

The first element is not disputed—JBN's marks GET KRANK'D and KRANK'D are registered with the USPTO. Thus, we discuss the second element—likelihood of confusion. We consider seven factors in assessing the likelihood of confusion: "(1) type of mark; (2) similarity of mark; (3) similarity of the products the marks represent; (4) similarity of the parties' retail outlets and customers; (5) similarity of advertising media; (6) defendant's intent; and (7) actual confusion." *Lipscher v. LRP Publ'ns, Inc.*, 266 F.3d 1305, 1313 (11th Cir. 2001). We now address Hi-Tech's specific arguments against JBN's likelihood of success regarding the likelihood of confusion.

Hi-Tech first asserts the USPTO's approval of Hi-Tech's KRANK3D mark for publication undercuts JBN's claims of confusing similarity. The USPTO has not issued a final determination regarding the KRANK3D mark. It has only rendered an initial determination that the KRANK3D mark be published for opposition, and JBN has filed a notice of opposition. The TTAB proceeding was subsequently stayed by the filing of this lawsuit. Although the

initial determination to approve the mark for publication is relevant, it need not be given much weight when JBN immediately filed a notice of opposition and the proceedings have been stayed. *See Royal Palm Props., LLC v. Pink Palm Props., LLC*, 950 F.3d 776, 789 n.9 (11th Cir. 2020) ("The federal courts have been unanimous . . . in holding that we are not *bound* by the PTO's confusingly-similar analysis."); *A & H Sportswear, Inc. v. Victoria's Secret Stores, Inc.*, 237 F.3d 198, 221 (3d Cir. 2000) (stating "although an initial PTO determination by an examining attorney may be considered, it need not be given weight when the PTO attorney did not review all the evidence available to the District Court"). The district court did not err in not attaching great weight to the fact the USPTO rendered an initial determination the KRANK3D mark be published for opposition.

Hi-Tech next contends there is no evidence of actual confusion between the marks. While it is true that "evidence of actual confusion is the best evidence of a likelihood of confusion," it is not a prerequisite to a finding of likelihood of confusion. *Wreal, LLC v. Amazon.com, Inc.*, 38 F.4th 114, 137 (11th Cir. 2022) (alteration omitted). Rather, "[o]ne merely has to show that the likelihood of confusion exists." *Id.* Thus, the lack of evidence of actual confusion, which could be explained by Hi-Tech only using the KRANK3D mark for a short period of time before being enjoined, is not fatal to JBN's claim.

Hi-Tech contends the marks are not confusingly similar. As the district court determined, the parties' marks are similar. "The

greater the similarly, the greater the likelihood of confusion." *Fla. Int'l Univ. Bd. of Trustees v. Fla. Nat. Univ., Inc.*, 830 F.3d 1242, 1260 (11th Cir. 2016). Further, "[t]wo marks need not be identical to support a finding of infringement, and the key question remains whether the marks are sufficiently similar 'to deceive the public.'" *Id.* We agree with the district court that the marks are almost identical, with only one character difference, utilizing all capital letters, and the unusual spelling of "crank" starting with a "K." Also, both marks are used to advertise dietary supplements that boost energy.

Hi-Tech contends the products and the parties' customers are dissimilar. We disagree. The products are similar as they both have powders mixed with water that are used to enhance workouts and boost energy. As the district court determined, "[w]hile there may be technical differences between the products, the average consumer searching for a powder to mix with a drink to boost workout performance could easily believe that these products originated from a single source." Additionally, the parties' customers are similar as both products target customers interested in an active lifestyle.

Finally, Hi-Tech contends it is not benefitting from JBN's goodwill as JBN's trademark is not famous. The district court did not clearly err in finding that Hi-Tech was benefitting from the goodwill of JBN, a business that has had some form of KRANK'D mark registered since 2006. The district court reasoned that Hi-Tech was put on notice of JBN's KRANK'D mark when JBN's counsel sent Hi-Tech a cease-and-desist letter in August 2023.

However, Hi-Tech did not cease its use of the KRANK3D mark, but rather continued to market its product using that mark. Hi-Tech also used the ® symbol next to the KRANK3D mark, indicating the mark had been formally registered with the USPTO. The use of the ® symbol was inappropriate as the USPTO had not issued final approval of the mark. The district court found the combination of those facts showed a bad-faith intent on the part of Hi-Tech to capitalize on the goodwill of JBN's mark, as intent can be proven with evidence that Hi-Tech "had a conscious intent to capitalize on [JBN's] business reputation, was intentionally blind, or otherwise manifested improper intent" in choosing its trademark. *See Fla. Int'l Univ. Bd. of Trustees*, 830 F.3d at 1263 (quotations omitted).

All of Hi-Tech's arguments regarding why JBN did not have a likelihood of success fail. The district court did not abuse its discretion in determining JBN showed a likelihood of success on its trademark infringement claim.

### 2. Irreparable Harm

Hi-Tech asserts JBN did not show irreparable harm based on JBN's delay in seeking a preliminary injunction. Hi-Tech asserts that JBN did not file a motion for a preliminary injunction until six months after learning of Hi-Tech's mark. Hi-Tech asserts the *Wreal* decision supports that JBN's delay is fatal to its showing of irreparable injury.

In *Wreal*, this court held the district court did not abuse its discretion in concluding "that Wreal's unexplained five-month

delay in seeking a preliminary injunction, by itself, fatally undermined any showing of irreparable injury." *Wreal*, 840 F.3d at 1248. Here, the district court considered *Wreal*, but found the facts of that case inapposite to this one. While JBN first learned of Hi-Tech's mark around late July of 2023, JBN's counsel sent Hi-Tech a cease-and-desist letter on August 8, 2023. Then JBN filed a notice of opposition with the TTAB after Hi-Tech's mark was published for opposition. JBN was taking multiple steps to protect its KRANK'D marks once it learned of Hi-Tech's mark during the six months from learning of the mark until it sought a preliminary injunction. Additionally, as the district court noted, *Wreal* did not hold that a five-month delay in seeking an injunction was *per se* too long. It only held that it was within the district court's discretion to determine that an unexplained delay of five-months was fatal to irreparable injury under the facts of that case.

Hi-Tech's arguments regarding irreparable harm fail. The district court did not abuse its discretion in determining JBN has shown irreparable injury.

### 3. *Balance of the Hardships*

Hi-Tech next contends JBN has made no showing of any existing or threatened injury resulting from Hi-Tech's use of the KRANK3D mark. The district court determined the balance of the hardships weighed in favor of JBN as Hi-Tech had early knowledge of JBN's mark and continued to use the KRANK3D mark along with the unauthorized ® symbol. Because Hi-Tech could have changed its behavior when alerted of a competing mark and chose

not to, any hardship to Hi-Tech was caused by its own actions. This finding by the district court is not clearly erroneous and the district court did not abuse its discretion in determining the balance of the hardships weighed in JBN's favor.

### 4. *Public Interest*

Hi-Tech also contends JBN did not establish that the injunction would not be adverse to the public interest. Hi-Tech asserts the district court's order does not account for the fact that the USPTO determined the KRANK3D mark was appropriate for publication, and there is no evidence that Hi-Tech's product is unsafe or unlawful. Thus, public interest is best served by allowing the public to continue to purchase Hi-Tech's products.

As stated previously, the district court did not err in not attaching great weight to the fact the USPTO rendered an initial determination the KRANK3D mark be published for opposition. As to the safety of Hi-Tech's product, there is evidence that DMHA, a substance that Hi-Tech uses in KRANK3D, is considered unsafe. Specifically, the FDA has issued the following statement: "FDA considers DMHA to be a substance that does not meet the statutory definition of a dietary ingredient and is an unsafe food additive. Accordingly, we consider dietary supplements containing DMHA to be adulterated under the Federal Food, Drug, and Cosmetic Act." U.S. Food & Drug Admin., DMHA in Dietary Supplements (March 6, 2023).

The district court did not abuse its discretion in determining an injunction would not be adverse to the public interest. *See*

*Davidoff & CIE, SA v. PLD Int'l Corp.*, 263 F.3d 1297, 1304 (11th Cir. 2001) (holding an injunction was "not adverse to the public interest, because the public interest is served by preventing consumer confusion in the marketplace").

## B. Bond Amount

Hi-Tech contends the district court erred in requiring a *de minimis* security bond of $5,000, which fails to protect Hi-Tech from any significant costs and damages it may incur due to the injunction. Hi-Tech asserts the district court had no support for the low bond amount, and it failed to consider Hi-Tech's supplemental brief regarding the bond amount, which set out facts supporting a bond amount of $1,694,226.15.

The amount of bond "is a matter within the discretion of the trial court." *Bell South Telecomm., Inc. v. MCIMetro Access Transmission Servs., LLC*, 425 F.3d 964, 971 (11th Cir. 2005). The district court reasoned counsel for Hi-Tech was given an opportunity to offer a figure for the bond amount at the hearing, but did not offer one, and the district court determined it was too late for Hi-Tech to request a specific amount in additional briefing. The district court did not abuse its discretion in setting the bond amount at $5,000.

## III. CONCLUSION

Hi-Tech's arguments against the entry of preliminary injunction fail, and we agree with the district court's well-reasoned order granting the preliminary injunction enjoining Hi-Tech from using the KRANK3D mark. The district court did not abuse its

12                    Opinion of the Court                    24-10564

discretion in entering a preliminary injunction or in setting the bond amount.

**AFFIRMED.**